UNITED STATES, Appellee,

v.

William J. BAER, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 99–0872.
Crim.App. No. 97–2044.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 29, 2000.

Decided July 26, 2000.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., and GIERKE, J., joined. EFFRON, J., filed an opinion concurring in part and in the result, in which SULLIVAN, J., joined.

For Appellant: *Lieutenant Michael A. Castelli*, JAGC, USNR (argued); *Lieutenant John D. Holden*, JAGC, USNR (on brief).

For Appellee: *Captain Edward C. Durant*, USMC (argued); *Colonel Kevin M. Sandkuhler*, USMC, *Commander Eugene E. Irvin*, JAGC, USN, and *Major Mark K. Jamison*, USMC (on brief).

Senior Judge COX delivered the opinion of the Court.

This case is before us after appellant, Lance Corporal (LCpl) William J. Baer, pled guilty to robbery, aggravated assault, conspiracy, kidnapping, and murder charges.[1] LCpl Baer was stationed at the Marine Corps Base in Kaneohe Bay, Hawaii, and the charges arose from his role in a brutal kidnapping and murder of a fellow Marine, LCpl Guerrero. LCpl Baer was sentenced to confinement for 25 years, reduction to pay grade E–1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the sentence and ordered it executed, except for the dishonorable discharge. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This court granted review on November 23, 1999, on the following issue:

WHETHER THE LOWER COURT ERRED IN FINDING NO ABUSE OF DISCRETION WHERE THE MILITARY JUDGE ALLOWED TRIAL COUNSEL TO ASK THE MEMBERS TO PUT THEMSELVES IN THE PLACE OF THE VICTIM WHEN HE WAS TORTURED AND MURDERED.

1. Violations of Articles 122, 128, 81, 134, and 118, Uniform Code of Military Justice, 10 USC

*Facts*

Appellant and his three Marine coconspirators entered into an agreement to lure their victim, LCpl Juan Guerrero, into one of their homes, where they planned to rob him. Under the pretext of promised repayment of an overdue loan, LCpl Guerrero was invited to the home of LCpl Michael Pereira. LCpl Guerrero drove to LCpl Pereira's home in his car, expecting to pick up his money and then return to his barracks. Almost immediately after entering LCpl Pereira's home, he was simultaneously attacked by each of the coconspirators, including appellant. Using their fists, shod feet, a baseball bat, and a "stun-gun," they ultimately assaulted LCpl Guerrero to the point of complete unconsciousness. They then bound their victim's mouth, hands, arms, and legs with heavy duct tape, wrapped his body in a canvas car cover, and loaded him into the back of a coconspirator's Chevy Blazer. Appellant then removed stereo equipment and other items from LCpl Guerrero's car.

Upon completion of this robbery, all four conspirators transported LCpl Guerrero to a remote site on the island of Oahu, where LCpl Darryl Antle summarily executed him with a single pistol shot to the head. LCpl Guerrero's body was then dumped over a railing and into a deep ravine. Almost a month passed before the badly decomposed remains of LCpl Guerrero were discovered. Within days of the discovery, appellant and his coactors were identified as possible perpetrators, and two of them (including appellant) ultimately confessed their involvement in this heinous crime. Various items of LCpl Guerrero's stereo equipment were later recovered from appellant's home.

LCpl Baer was tried by general court-martial, officer members, on November 18, 1996, and January 15–18, 1997. The assistant trial counsel (ATC) conducted the sentencing hearing for the Government. During the course of his argument, the ATC made the following statements:

§§ 922, 928, 881, 934, and 918, respectively.

Imagine him entering the house, and what happens next? A savage beating at the hands of people he knows, fellow Marines, to which the accused was a willing participant. He's grabbed, he's choked, he's beaten, he's kicked, he's hit with a bat, small baseball bat. Imagine being Lance Corporal Guerrero sitting there as these people are beating him.

Upon hearing this statement, the civilian defense counsel immediately objected, claiming that this was improper argument, as the ATC was inviting the jury to imagine themselves in the victim's position. The military judge responded as follows in the presence of the members:

> I disagree. What the trial counsel is trying to do is describe the particular situation in which the victim was in, and that's an appropriate consideration for the members to consider in determining an appropriate sentence.

Two hundred forty words later in the record, the ATC again made an argument that appellant deemed objectionable.[2] He said:

> Imagine. Just imagine the pain and the agony. Imagine the helplessness and the terror, I mean the sheer terror of being taped and bound, you can't move. You're being taped and bound almost like a mummy. Imagine as you sit there as they start binding.

### Discussion

■ The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused. *See United States v. Shamberger,* 1 MJ 377 (CMA 1976); *United States v. Gerlach,* 16 USCMA 383, 37 CMR 3 (1966). Whether or not the argument in question was technically erroneous, we do not believe that appellant's substantial rights were materially prejudiced by it, and so we affirm the court below.

■ When arguing for what is perceived to be an appropriate sentence, the trial coun-

sel is at liberty to strike hard, but not foul, blows. *United States v. Edwards,* 35 MJ 351 (CMA 1992); *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). It is appropriate for trial counsel—who is charged with being a zealous advocate for the Government—to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence. *United States v. Nelson,* 1 MJ 235, 239 (CMA 1975).

■ However, as noted by the Court of Criminal Appeals, "arguments aimed at inflaming the passions or prejudices of the court members are clearly improper." Unpub. op. at 4, citing *United States v. Clifton,* 15 MJ 26, 30 (CMA 1983). Thus, the members are not to be asked to fashion their sentence "upon blind outrage and visceral anguish," but upon "cool, calm consideration of the evidence and commonly accepted principles of sentencing." *Id.*

In this regard, "Golden Rule" arguments that ask the court members to place themselves in the position of a near relative of the victim have been held by this Court to be improper. *See United States v. Shamberger, supra* (trial counsel asked members to place themselves in the position of rape victim's husband, who was restrained and watched as his wife was repeatedly raped); *United States v. Wood,* 18 USCMA 291, 40 CMR 3 (1969) (trial counsel asked members to sentence accused from the perspective that their own sons had been the victims of indecent liberties by the accused); *United States v. Teslim,* 869 F.2d 316, 327 (7th Cir.1989) ("A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.' ").

While the prohibition against Golden Rule arguments originated with civil trials, when a plaintiff requested that a jury put itself in the place of the individual victimized by the defendant in order to gain higher damages,

---

**2.** Although the trial defense counsel did not specifically object to the second quotation after being overruled on the first, for the purposes of our analysis, we are treating the initial objection as applying to both of the quotations.

the prohibition has since been incorporated into the protection afforded a criminal defendant. *See Forrestal v. Magendantz,* 848 F.2d 303, 309 (1st Cir.1988); *see also* 75A Am.Jur.2d, *Trial* § 650 (1991).

▇ In this case, we hold that Golden Rule arguments asking the members to put themselves in the victim's place are improper and impermissible in the military justice system.

On the other hand, we also recognize that an argument asking the members to imagine the victim's fear, pain, terror, and anguish is permissible, since it is simply asking the members to consider victim impact evidence. *See, e.g., United States v. Holt,* 33 MJ 400, 408–09 (CMA 1991).

Logically speaking, asking the members to consider the fear and pain of the victim is conceptually different from asking them to put themselves in the victim's place. *See United States v. Edmonds,* 36 MJ 791, 793 (ACMR 1993). However, in the heat of the argument, a trial counsel who is not adequately mindful of this distinction may find himself easily crossing the line and wandering dangerously into the realm of impermissible argument.

We believe that happened in this case. While we agree with the court below that the ATC's argument as a whole was not calculated to improperly inflame the members' passions or possible prejudices, we cannot agree that the military judge was entirely correct when he failed to sustain defense counsel's timely objection. On their face, the selections of the ATC's arguments put forward by appellant do cross the line into impermissible argument.

▇ However, as a threshold matter, the argument by a trial counsel must be viewed within the context of the entire court-martial. The focus of our inquiry should not be on words in isolation, but on the argument as "viewed in context." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *see also Dunlop v. United States,* 165 U.S. 486, 498, 17 S.Ct. 375, 41 L.Ed. 799 (1897) ("If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would

stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation."). In this regard, we agree with the Government's position that it is improper to "surgically carve" out a portion of the argument with no regard to its context. As Justice Frankfurter once commented, "In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution." *Johnson v. United States,* 318 U.S. 189, 202, 63 S.Ct. 549, 87 L.Ed. 704 (1943) (Frankfurter, J., concurring).

▇ Looking at the entire argument, we find no basis for disagreeing with the lower court's conclusion that the direction, tone, and theme of the ATC's argument was not calculated to inflame the members' passions or possible prejudices. Instead, it is clear that the ATC was attempting to describe the particular situation in which the victim was placed, an entirely appropriate consideration for the members in determining an appropriate sentence. The objectionable selections were properly placed by the lower court in that context.

In this case, the ATC argued for confinement for life, while trial defense counsel, in a lengthy argument following the ATC, argued for confinement for 12 to 15 years. The members sentenced appellant to 25 years, a significantly shorter period than the sentence the ATC advocated. Even assuming a deliberate strategy to indulge in improper argument, the ATC's effort to "cultivate a severe sentence did not bear fruit." *United States v. Ramos,* 42 MJ 392, 397 (1995).

In view of the relative lightness of the sentence which appellant received, we believe that his substantial rights were not materially prejudiced by the imperfections in his sentencing hearing. Since there was no material prejudice, we do not view the improper Golden Rule argument to have been egregious enough to call for overturning the sentence.

However, it bears reiterating that in cases of improper argument, each case must rest on its own peculiar facts. Trial counsel who make impermissible Golden Rule arguments and military judges who do not sustain proper objections based upon them do so at the peril of reversal.

Also, in upholding the lower court, we specifically do not make use of or accept the Government's proposed defense of good intentions.[3] Rather, we hold that the touchstone of whether an argument is improper is not based on the calculation of the counsel making it, but is rather the argument itself viewed in its entire context. What the trial counsel may or may not have calculated in making an improper argument is not as important as the actual direction, tone, theme, and presentation of the argument as it is delivered. Trial counsel must therefore actively take responsibility upon themselves to avoid all improper argument, rather than to rely on their own noble intentions as a defense against the potential consequences of such arguments. The best and safest advocacy will stay well clear of the "gray zone."

Military judges, as well, should enforce the letter as well as the spirit of the law by sustaining objections to Golden Rule arguments. Even though we are not prepared to go so far as to say that the military judge abused his discretion in this case, the arguments of counsel should not only be evaluated within their context, but also for their literal adherence to the standards of proper argument.

### Conclusion

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

EFFRON, Judge, with whom SULLIVAN, Judge, joins (concurring in part and in the result):

I agree with the majority's prohibition against "Golden Rule" arguments and with the observation that counsel's argument must be reviewed in context rather than in isolation. I do not agree with the majority's view that, in the context of this case, there was no error.

After trial counsel made the first statement encouraging the jurors to "imagine being" the victim, the defense counsel objected to the improper argument. The military judge at that point should have admonished trial counsel about the limits of such argument, rather than overruling the objection. Given free rein by the military judge's erroneous ruling, trial counsel went on to violate the rule several more times, asking the members to:

Imagine. Just imagine the pain and the agony. Imagine the helplessness and the terror, I mean the sheer terror of being taped and bound, you can't move. You're being taped and bound almost like a mummy. Imagine as you sit there and they start binding.

The foregoing passage underscores the import and context of trial counsel's remarks. Repeatedly urging the members to imagine themselves as the victim reflects trial counsel's request that the members "judge the issue from the perspective of personal interest," which is impermissible. *United States v. Shamberger*, 1 MJ 377, 379 (1976), quoting *United States v. Wood*, 18 USCMA 291, 296, 40 CMR 3, 8, 1969 WL 5996 (1969).

Under these circumstances, the content and context of trial counsel's argument was clear, and the military judge erred by failing to act in light of the defense objection. Nonetheless, although the facts and circumstances reflected in the majority opinion do not show an absence of error, I agree that they demonstrate that the error was harmless in the context of this case. *See* Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

---

**3.** "The Government asserts that the touchstone determination of improper argument should not turn on the words spoken, but on the intent of the prosecutor in using those arguably offending words." Answer to Final Brief at 6.