Judge RYAN
delivered the opinion of the Court.
A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of six specifications of indecent acts and one specification of assault with intent to commit rape, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2006 & 2012). The MJ dismissed Appellant’s Article 80, UCMJ, 10 U.S.C. § 880 (2012), charge for attempted rape, and the panel found Appellant not guilty of ten other specifications, including indecent exposure, unlawful touching, impeding an investigation, and communicating threats. The panel sentenced Appellant to one year of confinement, a dishonorable discharge, reduction to E-l, and forfeiture of all pay and allowances. The findings and sentence were approved by the convening authority and affirmed—with a proviso for 30-days’ confinement credit—by the Army Court of Criminal Appeals (ACCA). United States v. Sewell, No. ARMY 20130460, 2016 CCA LEXIS 58 at *3-4, 2016 WL 381340 at *1 (A. Ct. Crim. App. Jan. 29, 2016). We granted review of the following issue in this ease:
Whether the trial counsel committed pros-ecutorial misconduct by making improper argument on the findings.
Some of trial counsel’s statements during argument were improper. However, even assuming clear or obvious error, see United States v. Knapp, 73 M.J. 33, 36 (C.A.AF. 2014), we find no prejudice. The evidence underlying Appellant’s convictions was demonstrably stronger than the evidence underlying his acquittals, and we are “confident that the members convicted [him] on the basis of the evidence alone.” United States v. Fletcher, 62 M.J. 175, 184 (C.A.A.F. 2005). Finding no material prejudice to Appellant’s substantial rights, we affirm the CCA. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012).
I. FACTS
A. The Convictions
Appellant’s convictions involved six different individuals. The panel convicted Appellant of four specifications that arose from an allegation of sexual assault by PFC MN. Appellant was a noncommissioned officer in MN’s unit at Fort Hood. Prior to the alleged incident, Appellant had extended an open offer to MN to sleep in his spare bed in the *16 event she ever needed to do so. On her first night in the barracks, MN was uncomfortable staying in her own room because her roommate was hosting a guest, so she took Appellant up on his offer. Appellant showed her to his spare bed and MN eventually fell asleep. MN testified that she awoke to Appellant on top of her, completely naked, kissing her and taking off her shorts. After pushing Appellant off, MN left Appellant’s room and went next door to the room of her close acquaintance, JP. JP testified that MN was hysterical and upset when she entered her room, although JP did not mention any specific references to sexual assault. In Appellant’s Criminal Investigation Command (CID) interview, he admitted—after amending his story several times—that MN was indeed in his room, and that he was naked and rubbed lotion on his groin before attempting to give her a hug. Appellant was convicted of indecent conduct under Article 120 and sexual assault under Article 134.
The panel also convicted Appellant of one count of indecent conduct for masturbating in the presence of his acquaintance and neighbor, EB. EB testified that she let Appellant into her apartment one morning when he claimed to be locked out of his own. He sat on her living room couch while she returned to her bedroom to get ready for work. Shortly thereafter, she heard moaning and slapping skin. EB briefly saw Appellant naked and masturbating on her couch and quickly exited her apartment. In Appellant’s CID interview, he admitted that he was naked in EB’s apartment but told investigators that he got undressed in his sleep and was covered by a blanket.
Finally, the panel convicted Appellant of sending or showing images of his penis to four different individuals without their consent. In the course of its investigation, CID recovered 118 images of Appellant’s penis on his cell phone. Nine of these images were admitted as evidence at trial, CC, SG, and EW each testified that they received unwanted images of Appellant’s penis via text message. A fourth individual, JP, testified that Appellant displayed an image of his penis on his .phone while she rode in the passenger seat of his vehicle. Each witness either described the photos sent by Appellant or identified them as identical or similar to the images admitted into evidence.
B. The Acquittals
The panel acquitted Appellant of ten specifications. Two of these acquittals were related to incidents involving MN and EB, namely allegations that he contacted MN for the purpose of impeding an investigation and that he intentionally exposed himself to EB in her apartment,
The remaining eight specifications of which Appellant was acquitted arose from two other alleged incidents. Pom.' specifications of indecent conduct and one specification of unlawful touching were based on allegations related to a house party that Appellant attended with two of his accusers, KS, who was the owner of the home, and KP. At some point during the party, Appellant went outside to sit in his jeep. KS testified that she noticed this and walked out to engage Appellant in a conversation at his vehicle. She warned him against driving drunk and offered to let him stay the night. Appellant allegedly accepted her offer and, while still sitting in his jeep, asked KS to turn around so that he could change into pajamas. After he had supposedly changed, he signaled KS to turn back around, and when she did so she saw him naked and masturbating, KS testified that she felt “shocked” by the incident, but afterward she let Appellant stay the night at her home and sleep on her couch with two other female guests, KP and LA.
KP confirmed that she slept on the couch with Appellant, despite hearing that Appellant had been observed masturbating in his jeep. KP testified that she awoke at one point during the night to find Appellant ejaculating on her foot. The Government presented no witnesses or corroborating evidence to support KS and KP’s accusations. Nor did Appellant admit any inculpatory facts to support either incident.
The final three specifications of which Appellant was acquitted arose from an allegation that he exposed his penis to ST, the thirteen-year-old daughter of his roommate *17 in Copperas Cove, Texas.[1] ST’s father allegedly left her at his apartment with Appellant while, according to ST, her father visited his new girlfriend in a hotel room overnight. ST testified that she was doing homework on her computer while sitting on the couch next to Appellant as he watched TV in his pajamas. At some point, she looked over and saw Appellant’s exposed penis through the unbut-, toned hole of his pajama pants. ST also testified that she later awoke to Appellant covering her with a blanket while she slept on the couch, but that she could not remember clearly if he was naked when he did so. ST subsequently admitted that Appellant appeared to be asleep while he was watching TV and that his pants might have unbuttoned accidentally when he sat down, and she testified that the blanket incident might have been a dream. ST’s father admitted that after learning of the pajamas incident from his daughter, he neither confronted Appellant or contacted law enforcement or military authorities, nor asked Appellant to vacate the apartment.
C. Trial Counsel’s Arguments
1. Preserved Errors
Appellant argues that the trial counsel, Lt. Col. Matthew McDonald, made improper arguments that prejudiced his right to a fair trial. At trial, defense counsel raised several objections to remarks related to Appellant’s criminal disposition or propensity to commit the charged crimes. The MJ found error in only the following two statements:[2]
What kind of man has 118 photos of this on his phone? You can use your own common sense, ways of the world. Is that normal? Maybe one or two men have, maybe three or four. 118? That’s only one man and he’s Sergeant Sewell. Is he the type of guy that has 118 pictures of this on his phone? Is that the type of guy that would do this to people? You all know the answer.
What type of guy keeps sending pictures to somebody after they tell him no, to stop? Won’t take no for an answer. If he won’t take no for an answer when they tell him to stop sending pictures, he’s not going to take no for an answer of PFC [MN] when she’s telling him to get off, when she’s trying to push him off. He won’t take no for an answer from any female.
After finding error, the MJ promptly gave the following instructions to the panel:
Members, two portions of LTC McDonald’s argument to you were improper and I’m going to ask you to disregard them. One of them was at a point in his closing argument he stated what kind of man—words to the effect of what kind of man has 118 images of his penis on his cell phone, to the extent that that was an invitation for you basically to use that evidence that was introduced that he had 118 images of his penis on his cell phone as somehow character that’s showing that he’s some kind of deviant. I’m going to ask you to disregard it for that purpose. Likewise, LTC McDonald made some argument that the fact that the accused sent photographs of his penis, or is at least alleged to have, to women after they’d said I don’t want to see that any more [sic] as standing for a general proposition that he doesn’t take no for an answer, and therefore, that could be used for purposes of other offenses including the alleged assault on PFC [MN], Once again that’s an improper invitation for you to consider that act for a propensity purpose that I’ve not instructed you on.
2. Other Errors
Appellant failed to object to other statements that he challenges on appeal, including *18 additional propensity arguments, improper vouching, references to facts not in evidence, and statements that purportedly inflamed the passions of the panel. For example, trial counsel referred to Appellant as an “old dirty man in the trench coat” and a “sexual predator.” He also flatly referred to Appellant as guilty and declared that “we all know [Appellant] lied on the video.” Trial counsel also vouched for the testimony of PFC MN— among others—-by downplaying her initial reluctance to come forward and by telling the panel that “we all know she didn’t make this up.” In addition, trial counsel used personal pronouns like “I” and “we” pervasively throughout his argument.
II. ACCA DECISION
The Army Court summarily affirmed Appellant’s convictions, addressing only the one month of confinement relief awarded in light of Appellant’s pretrial confinement. Sewell, 2016 CCA LEXIS 68, at *2-4, 2016 WL 381340 at *1.
III. DISCUSSION
Improper argument is one facet of prosecutorial misconduct. See United States v. Young, 470 U.S. 1, 7-11, 106 S.Ct. 1038, 84 L.Ed.2d 1 (1985). We review questions of improper argument and prosecutorial misconduct de novo. See United States v. Frey, 73 M.J. 246, 248 (C.A.A.F. 2014). “Prosecuto-rial misconduct occurs when trial counsel ‘overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.’” United States v. Hornback, 73 M.J. 155, 159-60 (C.A.A.F. 2014) (internal quotation marks omitted) (alteration in original) (quoting Fletcher, 62 M.J. at 178 (quoting Berger v. United States, 295 U.S. 78, 84, 55 S.Ct. 629, 79 L.Ed. 1314 (1935))). Such conduct “can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon.” Id. at 160 (citations omitted). In his arguments, trial counsel “may strike hard blows, [but] he is not at liberty to strike foul ones.” Berger, 295 U.S. at 88, 55 S.Ct. 629. In this regard, it is appropriate for trial counsel “to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.” United States v. Baer, 53 M.J. 235, 237 (C.A.A.F. 2000). He may not, however, inject his personal opinion into the panel’s deliberations, inflame the members’ passions or .prejudices, or ask them to convict the accused on the basis of criminal predisposition. See United States v. Burton, 67 M.J. 150, 153 (C.A.A.F. 2009); Fletcher, 62 M.J. at. 180; Baer, 53 M, J. at 238.
When preserved by objection, this Court reviews allegations of improper argument de novo to determine whether the military judge’s ruling constitutes an abuse of discretion. Hornback, 73 M.J. at 159; Article 59(a), UCMJ. On the other hand, if there is no objection at trial, the appellant has the burden of establishing the prejudice. See United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F. 2007). In either case, reversal is warranted only “when the trial counsel’s comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.” Homback, 73 M.J. at 160. (internal quotation marks omitted) (citation omitted).
In Fletcher, this Court set out three factors to guide our determination of the prejudicial effect of improper argument: “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s].” 62 M.J. at 184. We have observed, albeit in the context of sentencing, that the third factor may so clearly favor the government that the appellant cannot demonstrate prejudice. United States v. Halpin, 71 M.J. 477, 480 (C.A.A.F. 2013).
Appellant argues, citing Fletcher, that trial counsel’s improper arguments rendered his trial unfair. He points to the pervasive scope of allegedly improper arguments and claims that the military judge’s curative instructions were too narrow and infrequent to offset the prejudicial effect of the challenged statements. Moreover, he maintains *19 that the Government’s heavy reliance on testimonial evidence increased the likelihood that improper arguments unfairly swayed the panel in an otherwise close case. We disagree. Even assuming that trial counsel’s misconduct was severe and the military judge’s instructions were insufficient, we find the third Fletcher factor dispositive.
We considered similar circumstances in Hornback. 73 M.J. at 161. In that case, despite clear errors by the trial counsel, the testimony of two witnesses who observed the appellant smoking an illicit substance was so strong that we were “confident that the members convicted [the appellant] on the basis of the evidence alone.” Id. at 161. This was true even in the absence of a drug test and in the face of pervasive improper arguments about the appellant’s character as a drug user. Id. We also noted that, despite trial counsel’s improper attempts to establish propensity, the panel’s acquittals of similar charges “indieate[d] that it took the military judge’s instructions to disregard impermissible character evidence seriously.” Id.
In Appellant’s court-martial, the Government produced substantial evidence of his guilt for the offenses of which he was convicted. With respect to MN and EB, the Government proffered both each victim’s testimony and Appellant’s admissions to CID placing him at each scene in admittedly compromising circumstances (as in admitted he was naked and rubbing lotion on his groin in the offense involving MN, and admitted he was naked having “undressed in his sleep” in the offense involving EB). The Article 134 conviction involving MN also drew support from the testimony of JF who observed MN acting hysterical and upset immediately after the alleged incident. With respect to Appellant’s four indecent exposure convictions the Government introduced both photographic evidence of photos of Appellant’s penis retrieved from his phone and detailed testimony from four victims about the images Appellant sent or showed them. Moreover, the panel was properly instructed that it could consider the fact that 118 images were retrieved from Appellant’s phone in assessing the likelihood that his transmissions were by accident or mistake.
In contrast, Appellant was acquitted of all specifications for which there was no corroborating evidence in the form of either incul-patory admissions by Appellant or photographs retrieved from his phone. The panel’s mixed findings further reassure us that the members weighed the evidence at trial and independently assessed Appellant’s guilt without regard to trial counsel’s arguments. We presume, absent contrary indications, that the panel followed the military judge’s instructions that trial counsel’s arguments were not evidence and that it must not engage in spillover when determining Appellant’s guilt.
In light of the evidence and the outcome of Appellant’s trial, we are “confident that the members convicted the appellant on the basis of the evidence alone.” Homback, 73 M.J. at 160 (internal quotation marks omitted) (citation omitted)
IV. JUDGMENT
The decision of the United States Army Court of Criminal Appeals is affirmed.

. Specification 3 of Charge IV did not directly involve ST, but it alleged that Appellant made threats of violence in response to his investigation that were overheard by ST's father, Sgt Robert T.

. Defense counsel's unsuccessful objections included a challenge to trial counsel’s assertion that the panel could use sexual assault evidence to rebut the defense of accident on Appellant’s indecent exposure charges, trial counsel’s statement that Appellant acted with the intent to gratify his sexual desires, and trial counsel's argument that Appellant's exposures reflected his testing the receptiveness of the alleged victims, The military judge did not abuse his discretion with respect to any of these rulings.