# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, BROOKHART, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant WILLIAM T. BARKSDALE III**
**United States Army, Appellant**

ARMY 20170090

Headquarters, U.S. Army Medical Department Center and School
Jacob D. Bashore and Charles L. Pritchard, Jr., Military Judges
Lieutenant Colonel Joshua A. Berger, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on brief); Major Julie L. Borchers, JA; Captain Steven J. Dray, JA; Captain Oluwaseye Awoniyi, JA (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Captain Jeremy Watford, JA; Major Meghan Peters, JA (on brief).

28 August 2019

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Per Curiam:

In his sole assignment of error, appellant asserts trial counsel made several improper arguments that warrant relief from this court. While we find some of these findings arguments were improper, in the end we find appellant was not prejudiced and grant no relief.[1]

---

[1] We have considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit. One matter, however, bears a brief discussion. Appellant asserts errors in the Article 32, UCMJ, process resulted in the improper referral of his case to trial and a violation of his due process rights.

There were two Article 32, UCMJ, hearings in this case. At the first hearing, the

(continued . . .)

BARKSDALE—ARMY 20170090

A panel of officers sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [UCMJ]. The panel sentenced appellant to a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged. This case is now before us for review under Article 66, UCMJ, following remand. *See United States v. Barksdale*, USCA Dkt. No. 19-0325/AR (C.A.A.F. 27 Aug. 2019) (order); *United States v. Barksdale*, ARMY 20170090 (Army Ct. Crim. App. 28 Aug. 2019) (order).

---

(. . . continued)
government did not call the victims alleged in the charges to testify, opting instead to introduce their statements and other evidence as permitted by Rule for Court-Martial [R.C.M.] 405 and Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832. The Preliminary Hearing Officer (PHO) assigned to the case, Captain Michael Crane, advocated, in his own words, a "radical" approach when he declared these provisions unconstitutional. Chaos ensued.

Rule for Court-Martial 405 and Article 32, UCMJ, limit an accused's right to call crime victims as witnesses at a preliminary hearing. Captain Crane believed it was improper to label a witness a "victim" until *after the trial* was complete, clearly ignoring Article 32(h), UCMJ, which defines a "victim" as a person who is: (1) "alleged" to have suffered "a direct physical, emotional, or pecuniary harm;" and (2) "named in one of the specifications." Captain Crane further reasoned R.C.M. 405 and Article 32, UCMJ, violated an accused's right to due process, confrontation, and right to counsel, ignoring any discussion of grand jury provisions in Federal criminal cases. Captain Crane, citing several times to *Marbury v. Madison*, 5 U.S. 137 (1803), repeatedly declared Article 32, UCMJ, "repugnant to the constitution" and therefore "void and is as no law." Captain Crane would not consider the statements of the victims because they were, in his mind, cumulative of *what would have been* the victims' testimony had they appeared. Unsurprisingly, he found no probable cause to support the charges. In short, Captain Michael Crane issued a report without any evidence, supported only by his multitudinous errors in law, reasoning, and common sense.

Upon receipt of Captain Crane's PHO report, the appointing authority ordered a new preliminary hearing with a more experienced PHO who exercised the judgement, maturity, and respect for the law expected of an officer executing that duty.

We reject appellant's suggestion that his due process rights were violated, the government impermissibly directed a second preliminary hearing, or that the proceedings were tainted by unlawful command influence. Instead, we see government officials trying to do their best after a rogue PHO derailed the preliminary hearing. There was no error or deprivation of appellant's due process rights by virtue of a second preliminary hearing.

2

## BACKGROUND

*1. The Article 120 offense*

Appellant and Specialist (SPC) DM were stationed together in Baumholder, Germany. They hung out together on weekends and were "drinking buddies." On three different occasions, appellant made sexual advances towards SPC DM. Each time, SPC DM declined. Even so, they remained friends.

In February 2015, SPC DM went to appellant's barracks room with a group of soldiers. Prior to going to the room, SPC DM drank around two or three mixed drinks and two beers. SPC DM sat on appellant's bed and texted his girlfriend. While in the room, SPC DM drank more alcohol. Specialist DM became tired, "woozy," and "a little dizzy," and fell asleep on appellant's bed. When he went to sleep, there were other soldiers in the room, the lights were on, and the music was playing. Several of the soldiers left the room to purchase more alcohol. However, several minutes later, they changed their minds and returned to the room. One of the soldiers knocked on the door and noticed the lights were off and music was no longer playing. The soldier left when he concluded appellant and SPC DM left the room.

Instead, appellant and SPC DM were alone in the room. Specialist DM next remembered waking to "gurgling noises," and to appellant performing oral sex on him. Specialist DM initially thought it was his girlfriend, but soon realized it was appellant. The lights were out and there was pornography on the television. Specialist DM testified he may have pushed appellant's head with his palm, but he "panick[ed]" and fell back to sleep. Later that night he woke up and sent a text to his girlfriend and did not tell her about the sexual assault. The next morning, SPC DM woke up with appellant sleeping next to him. Specialist DM left the barracks room, took a shower, and called the unit sexual response coordinator to file a restricted report. Specialist DM completed a medical examination.

Specialist DM spoke to appellant the next day and asked why appellant had sexually assaulted him. Appellant told SPC DM to just forget what happened. Months later, appellant moved to Fort Sam Houston and SPC DM unrestricted the report of the sexual assault.[2]

---

[2] The government subsequently preferred charges, to include the Article 120, UCMJ, offense involving SPC DM and a number of Article 134, UCMJ, offenses involving SPC DM, as well as other soldiers. At referral, the convening authority dismissed two charges involving the assault of another soldier and housebreaking.

(continued . . .)

At trial, for the sexual assault offense, the government presented the testimony of SPC DM, testimony from two soldiers that had been at appellant's room the night of the assault, and testimony from the doctor that performed the medical examination of SPC DM. The medical examiner testified that SPC DM had abrasions and redness on his penis that was consistent with oral sex. The doctor testified that he could not say if the abrasions and redness were also consistent with masturbation or from wearing pants that were too tight. The government did not present any DNA or other forensic evidence.

Throughout the trial, defense counsel challenged the credibility of SPC DM, alleging he had a motive to fabricate the sexual assault to obtain future post-separation disability payments. The defense presented good soldier evidence through the testimony of several witnesses. Appellant did not testify.

### 2. Trial Counsel Arguments

During closing argument on findings, assistant trial counsel, Major JB, argued:

> Members, use your common sense and knowledge [of] the ways of the world. I looked at your ORBs and your backgrounds and questionnaires, there's over 100 years of experience amongst you. You know the impact having a senior NCO--an NCO who is senior to a subordinate, a specialist offering to perform oral sex, what that can have on good order and discipline. Do you want to be alone with specialist--Sergeant Barksdale now? *Do you think twice when he comes by the room? If he comes by for an office call, do you want to make sure the doors are open or maybe someone else is in the room? He has shown his cards now.*

(emphasis added). Defense counsel did not object.

Major JB continued:

---

(. . . continued)
At trial, the government withdrew two of the Article 134 offenses and the military judge dismissed three others. At the close of findings, the members were left with two allegations, both involving DM: the Article 120, UCMJ, specification; and one specification charged under Article 134, UCMJ, which alleged appellant wrongfully sent SPC DM a text which asked, "Can I blow you tonight?" The panel found appellant not guilty of the Article 134, UCMJ, offense.

[DM] came to and he left the room. *And you can imagine* it's very difficult for [a] young man who, whatever your personal beliefs, who he himself believes that this is wrong, immoral and he just had this happen to him. The first thing you're going to do is not go to New York Times. You're not going to call your buddy, you're not going to call your mom, you're definitely not going to call your girlfriend and tell her what just happened.

(emphasis added). Defense counsel did not object.

Major JB then asked in regards to the appellant:

I am going to come back and I am going to talk to you in rebuttal but, when you go back and deliberate and then when you listen to the defense's argument, I want you to ask yourself this question, does anything you're hearing explain how after being told no three times with text messages, rubbing of the shoulders, and putting his hands down his pants, does any of this explained [sic]----

Defense counsel objected at this point, and argued that the government was shifting the burden of proof to the defense. The military judge overruled the objection but also issued a curative instruction to the panel that the burden of proof "rests solely on the government to prove every element of every offense beyond a reasonable doubt."

Following MAJ JB's argument, the military judge sua sponte issued a curative instruction informing the members they could not infer a prejudice to good order and discipline based on common sense and the ways of the world. Rather, there had to be evidence of this element.

During his rebuttal argument, Major JB stated the following about the SPC DM's testimony:

During voir dire, I asked everyone if you agreed that it may be difficult to tell a room full of strangers about a very traumatic event. Does everybody remember that? Well, there you were, a young man who's talking in open court under oath about the worst day of his life. *And in my opinion, he did a great job.* And you, surprise, surprise he may be a little confrontational with the guy who is representing the man who assaulted him. Is that to be expected? Absolutely. *He still testified truthfully. He was consistent the entire time.*

(emphasis added). Defense counsel did not object.

Major JB continued:

> Now, Doctor Johnson, on redirect, actually said that what
> he saw didn't appear to be something caused by your pants
> being too tight. Remember he said he couldn't tell if it
> was masturbation but he did say that redness--redness and
> abrasions, abrasions. Many of you are medical people.
> Abrasions mean a lot of things.

Again, defense counsel did not object.

At the conclusion of the MAJ JB's rebuttal argument, the military judge again
sua sponte issued a curative instruction:

> Members, the trial counsel's opinion on how well a
> witness testifies is not important. You may not consider
> that for any purpose. To the--also the trial counsel
> referred to you as medical people. To the extent the trial
> counsel was encouraging you to substitute your experience
> in this case, you may not do that. You must put aside any
> personal experience or knowledge in medicine and rely
> solely on the evidence presented in this case. Can
> everybody do that? Apparently so.

The panel deliberated and found appellant guilty of the Article 120, UCMJ
offense.

## LAW AND DISCUSSION

We review prosecutorial misconduct and improper argument de novo. *United
States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). If proper
objection is made, the court will review for prejudicial error. *United States v.
Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing Article 59, UCMJ). Where there
is no objection at trial, this court reviews claims of improper argument for plain
error. *United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017).

*1. Preserved objection*

Defense counsel objected to trial counsel's argument concerning SPC DM
turning down appellant's three sexual advances before the assault on the basis that it
shifted the government's burden of proof to the defense. The military judge
overruled this objection, but nonetheless issued a curative instruction to the panel
that the burden of proof rested solely on the government.

6

We do not find the government's argument improperly shifted the burden of proof to defense counsel. We view this argument, at most, as an attempt by counsel to focus on facts presented at trial that weighed against any suggestion SPC DM may have somehow consented to the sexual act with appellant. In the same vein, we view the military judge's instruction as an exercise of an overabundance of caution, perhaps brought forth by the fact defense counsel raised the concept of burden shifting in front of the members.

As will be discussed with the other claims of improper argument, even if we assumed trial counsel's argument was improper, we find no prejudice.

### 2. Plain error

For the remaining arguments, as defense counsel did not object, we apply a plain error analysis. The burden of proof under the plain error review is on the appellant. *Sewell*, 76 M.J. at 18. An appellant must show that: (1) there was error; (2) the error was plain or obvious; and (3) the error was materially prejudicial to his substantial rights. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citing *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007)). When examining the second prong of the plain error test, we ask whether the "error was so obvious in the context of the entire trial that the military judge should be faulted for taking no action even without an objection." *United States v. Gomez*, 76 M.J. 76, 81 (C.A.A.F. 2017) (citing *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009)) (internal quotation marks omitted); *see also United States v. Frady*, 456 U.S. 152, 163 (1982) (noting that error is clear if "the trial judge and prosecutor [would be] derelict in countenancing it, even absent the defendant's timely assistance in detecting it."). "The third prong is satisfied if appellant shows a reasonable probability that, but for the error [claimed], the outcome of the proceeding would have been different." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citations and internal quotation marks omitted). "[F]ailure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2016).

We find two of trial counsel's arguments were improper.

First, we find counsel improperly asked the members to imagine being alone in a room with appellant. On appeal the government argues that the trial counsel was merely arguing about the terminal element of the Article 134 offense. We disagree. After reviewing the entire case, we do not find trial counsel's comment was a fair commentary on the evidence. The argument was improper and the error was plain and obvious. "Golden Rule arguments asking the members to put themselves in the victim's place are improper and impermissible in the military justice system." *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000).

7

Second, trial counsel should not have given a *personal opinion* that SPC DM "testified truthfully" and "did a great job" testifying. We conclude that trial counsel's personal opinion about SPC DM's testimony was also plain and obvious error under the facts of this case. This went beyond permissible argument on the evidence and SPC DM's testimony as it improperly vouched for SPC DM's credibility. *See Fletcher*, 62 M.J. at 180.

Regarding the other alleged improper arguments, any impact was so slight as to escape recognition by the military judge and appellant. *See United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018) (noting alleged improper argument was not plain and obvious where neither the military judge nor appellant recognized it, "indicating neither saw the need for remedial measures at all"). Thus the appellant has not met his burden to show plain error.

### 3. Was there material prejudice to a substantial right?

Whether we review an improper argument under a plain error analysis or as a matter preserved by an objection, both standards culminate with an analysis of whether there was prejudicial error. *See Sewell*, 76 M.J. at 18 ("In either case, reversal is warranted only 'when the trial counsel's comments taken as a whole were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.'" (quoting *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014)).

We review "[t]he cumulative effect of all plain errors and preserved errors . . . de novo." *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011) (citation omitted). "In assessing prejudice, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial. We weigh three factors to determine whether trial counsel's improper arguments were prejudicial: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.'" *United States v. Andrews*, 77 M.J. 393, 402 (C.A.A.F. 2018) (quoting *Fletcher*, 62 M.J. at 184).

Even assuming appellant preserved an error related to burden shifting, and considering the plain errors noted above, we conclude that trial counsel's arguments did not materially prejudice a substantial right of appellant.

First, in considering the trial counsel's entire argument, trial counsel's misconduct was not severe. The claims of error in trial counsel's argument are contained within approximately 23 pages of a 603-page record of trial. We do not find the trial counsel's arguments were calculated simply to inflame the panel's passions. Further, the panel's mixed findings demonstrate that the members weighed the evidence at trial and independently assessed appellant's guilt. *See Sewell*, 76

M.J. at 19. References to being alone with appellant were not so prejudicial that the panel convicted appellant of all charges and specifications.

Second, the military judge took appropriate measures to cure any improper argument by promptly issuing curative instructions to the panel. For example, the military judge issued curative instructions concerning the burden of proof always remaining with the government and to disregard the trial counsel's opinion about SPC DM's truthfulness. The defense counsel never requested a more tailored or specific curative instruction, and never moved for a mistrial. Appellant has not alleged, nor is there any indication from the record of trial, that the panel members did not follow the military judge's instructions.

Third, the government presented strong evidence of appellant's guilt. SPC DM's testimony about the sexual assault was credible. And while the government's case largely rested on the credibility of SPC DM, there was independent corroboration of his testimony. Testimony corroborated the fact that SPC DM was drinking alcohol that evening, became impaired, and fell asleep on appellant's bed. Two soldiers testified that they left SPC DM in this state, alone with appellant. When one of these Soldiers returned to the room, the door was closed and the lights were out, further corroborating SPC DM's testimony that appellant had shut off the lights. SPC DM reported the sexual assault the next morning by filing a restricted report and obtained a medical examination. The doctor who conducted the examination testified that SPC DM had abrasions and redness on his penis that were consistent with oral sex. Under all these facts, appellant has not demonstrated "a reasonable probability that, but for the error [claimed], the outcome of the proceeding would have been different." *Robinson*, 77 M.J. at 299.

Balancing these three factors, we are "confident that the members convicted appellant on the basis of the evidence alone." *Hornback*, 73 M.J. at 160 (citation omitted). Appellant was not prejudiced by trial counsel's improper argument.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court