*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, MIZER, and HARRELL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Kyle H. KIRBY**
Sonar Technician (Surface) Third Class Petty Officer (E-4),
U.S. Navy
*Appellant*

**No. 202300184**

_____

Decided: 29 August 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Rachel E. Trest

Sentence adjudged 22 March 2023 by a general court-martial tried at
Naval Air Station Jacksonville, Florida, consisting of a military judge
sitting alone. Sentence in the Entry of Judgment: reduction to E-1, con-
finement for seven months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Raymond E. Bilter, JAGC, USN*

For Appellee:
*Lieutenant Michael A. Tuosto, JAGC, USN*
*Lieutenant Gregory A. Rustico, JAGC, USNR*

Judge HARRELL delivered the opinion of the Court, in which Senior Judge KISOR and Judge MIZER joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

HARRELL, Judge:

Appellant was convicted, consistent with his pleas, of one specification of possessing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ).[1] Appellant asserts one assignment of error (AOE): whether the trial counsel committed prosecutorial misconduct during sentencing argument that materially prejudiced his sentence.[2] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant may have believed nobody could see what he was doing as he thumbed through images of young girls on his phone. But privacy was hard to come by on the ship, and somebody did see. Trial counsel seized upon this during Appellant's court-martial for possessing images of child pornography on that phone, arguing that Appellant exposed another Sailor to images of child erotica. These and other comments by trial counsel during sentencing argument constituted prosecutorial misconduct, asserts Appellant. We disagree.

On 23 August 2021, Sonar Technician (Surface) First Class Petty Officer (STG1) W. situated himself in a good spot for cell phone reception on USS *Jason Dunham* (DDG 109) to talk to his wife. Appellant did the same, but he took advantage of the reception for a different purpose. From STG1 W.'s elevated position a few feet away, he saw Appellant swiping through and pressing down on images of young girls posing provocatively in underwear. He surmised that Appellant was saving the images on his phone. After observing this for a few minutes, STG1 W. came down the ladder towards Appellant, and Appellant

———

[1] 10 U.S.C. § 934.

[2] Appellant raised this issue pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

quickly put his phone away. STG1 W. reported what he saw to the ship's Master-at-Arms and then to Naval Criminal Investigative Service (NCIS) agents.

An interrogation followed on 27 August 2021. After much denial and equivocation, Appellant admitted to NCIS agents that beginning in his mid-teenage years, he would go on "really shady [web]sites"[3] to look for images of girls. He said:

> [W]hen I was 15–16 and stuff like that, I wanted to look for, like, girls of my same age. And so, you know, I did that, and it kept progressing up and up and up until, before you know it, I'm, you know, basically out of my teenage years, and I'm still looking for stuff like that.[4]

That was his "stress reliever,"[5] he explained. And he recently needed that relief, "[b]ecause just getting to the ship and all that is very stressful."[6]

Appellant consented to a search of his phone; a commander later authorized the same. A forensic analysis at the Department of Defense Cyber Crime Center (DC3) revealed 3,015 "picture files" depicting "nude, semi-nude, or partially clothed persons some of which are posed in a sexually suggestive manner. These pictures files are commonly referred to as child erotica and/or child sexual abuse material."[7] "Of these 3,015 files identified, six (6) files were found to match the [National Center for Missing and Exploited Children] (March 2021) known victims database."[8]

In pretrial litigation after one specification of possessing child pornography was referred to a general court-martial, the military judge ruled:

> The Government may introduce evidence that the DC3 results that [sic] showed the Accused possessed over 3,000 images of child erotica,[9] his statement to NCIS that he has desires to look

---

[3] App. Ex. IX at 77. A video of the interrogation was admitted into evidence as Prosecution Exhibit 2, though references here are to a transcript thereof attached to the record.

[4] *Id.* at 79.

[5] *Id.* at 83.

[6] *Id.* at 84.

[7] Pros. Ex. 5 at 3, 7.

[8] *Id.* at 7.

[9] In a separate ruling, the military judge defined child erotica as "material that depicts young girls [or boys] as sexual objects or in a sexually suggestive way, but is

at images of younger girls and it is a problem for him, and STG1
[W.]'s testimony that he observed the Accused looking at images
of young girls on his phone while on duty on board DDG 109 on
23 August 2021."[10]

Appellant later entered a plea of guilty pursuant to a plea agreement. During the providence inquiry, he described to the military judge how he downloaded images from image sharing forums. He then explained:

This was over the course of, I'd say, a few years. And over time,
I may have had different feelings about it. Sometimes I will
amass a certain amount of images. And then I'll be like, well,
this is too much. I feel too guilty about this. I'm going to delete
them. And so I delete all of them. But I eventually used it as a
coping mechanism for stressful situations, such as being introduced to the crew of the ship and my workspace.[11]

This exchange followed:

MJ: So the images, approximately 40 images [of child pornography] that were on your phone on 27 August 2021,
you said you accumulated then over time, or when did
you accumulate those specific images?

[Appellant]: As much as I can remember, it could have been a matter
of a few weeks to a few days. I can't remember exactly.

MJ: So you accumulated them over a few weeks or a few
days. Was it recent to--in time to 27 August, or do you
know?

[Appellant]: Yes, Your Honor. It was recent in time to that day.[12]

The military judge accepted Appellant's pleas and found him guilty. In aggravation, the Government offered summaries of interviews of STG1 W. by
NCIS agents and trial counsel, a recording of Appellant's NCIS interrogation,
and the DC3 report of forensic analysis of Appellant's phone. The military

---

not sufficiently lascivious to meet the legal definition of sexually explicit conduct[.]"
pursuant to this Court's opinion in *United States v. Rapp*, No. 201200303, 2013 CCA
LEXIS 355 (N-M. Ct. Crim. App. 30 Apr. 2013) (unpublished). App. Ex. XIV at 8.

[10] App. Ex. XI at 10.

[11] R. at 126.

[12] R. at 126–27.

judge admitted the evidence without Defense objection.[13] Also among the Government's evidence was Appellant's stipulation that:

> On or about 27 August 2021, at or near Jacksonville, Florida, I knowingly possessed approximately 40 images of child pornography on my Samsung Galaxy S10e cellular phone. In general, the images were of prepubescent and early teenage girls whom I believe were actual minors.
>
> . . . .
>
> Prior to 27 August 2021, I routinely searched the Internet for images of young girls. When my cellular phone was seized by the Naval Criminal Investigative Service, it contained hundreds of images of minor girls dressed in underwear and depicted in sexually suggestive poses, comprising "child erotica." Although I did not search the "dark web," I found and saved the aforementioned images of child pornography while I was saving the many other images of child erotica.[14]

The Defense offered testimony from Appellant's parents, service record documents, and a series of personal and family photographs. In an unsworn statement facilitated by his defense counsel, Appellant told the military judge:

> [DC]: And so let's talk about why we're here today with the events. I know you talked about during providency that you had a lot of stress, and you kind of used this as bad coping mechanism. Can you talk about that and what you--what was the turning point for you?
>
> . . . .
>
> [Appellant]: I believe when I got to the ship and, you know, there were several members of the division that kind of didn't really accept me, that kind of dismissed me. A lot of the times I felt very dismissed and shunned from the division. And as a result, I was like, okay. At the time, I didn't really realize, but it's, of course, a bad coping mechanism, very bad. And I was like, you know what, I'll start it up again, because that was the one thing I

---

[13] In his plea agreement, Appellant agreed "not object to . . . relevant Naval Criminal Investigative Service evidentiary material . . . or relevant statements offered by the government in aggravation . . . ." App. Ex. XII at 3.

[14] Pros. Ex. 1 at 2.

really relied on to get myself through stressful situations like that. And regardless of the moral obligations.

. . . .

[DC]: Can you describe again what you've learned from this whole thing, what you learned during your NCIS interview that kind of changed your opinion on this type of coping mechanism?

[Appellant]: I'd say most definitely the agent, when I was talking to NCIS, she would explain to me, you know, I am a professional in this sector dealing with missing children, and child neglect, and stuff like that. And as she was explaining it to me . . . she explained this to me in a sort of way that I was like, okay. Well, these aren't just, I guess, objects in a photo to be used for sexual gratification. These are people behind these photos, possibly tormented people. And I'm contributing to their demise, you know, as they are stuck in this--wherever they're at getting pictures taken of them. I described it in my head as disgusting. And I never want to go back to that ever again.

[DC]: And when you came to this realization that, you know, that you're also looking at these photographs, kind of perpetuating the cycle of abuse, how does that make you feel?

[Appellant]: Horrified. To come to that realization that you're contributing to a child's suffering is not one you should ever face in your life. The other terror is I go home, and I realize that I am contributing in more ways than one just by downloading these images to the fact that some people see this as all right. It's a scar really, and the scar is left today. I can still feel it. Terrible.[15]

Trial counsel argued for a sentence of reduction to E-1 and the maximum amount of confinement allowed for in the plea agreement, 18 months, commenting:

---

[15] R. at 185–87.

His mom testified that this conviction will affect him for at least
the next 15 years while he is a registered sex offender, but no-
body today mentioned or acknowledged the lifelong impacts of
sexual exploitation to the children victims.

. . . .

[A]s you've seen, Petty Officer Kirby's problem was so pervasive
that he openly looked at child erotica while on duty. This was a
United States Sailor who was so comfortable looking at these
images, that he did it within a few mere feet of other Sailors. He
subjected the other Sailors to these images. This isn't a hypo-
thetical chance, maybe other Sailors could have seen it. We know
that another Sailor saw it. We know that STG1 [W.] was within
seven feet of Petty Officer Kirby, and he saw these images. And
he knew the images were wrong. And that's why he reported
that. And that is why we are here today.[16]

These are the arguments Appellant now complains of,[17] though no objection
was lodged by defense counsel at the time.

The military judge sentenced Appellant to a bad-conduct discharge (as re-
quired by the plea agreement), reduction to E-1 (as allowed by the plea agree-
ment), and 7 months confinement (within the 6 to 18 months range required
by the plea agreement).

Additional facts necessary to resolve the AOE are discussed below.

## II. DISCUSSION

### A. Law

"[P]rosecutorial misconduct occurs when a prosecuting attorney oversteps
the bounds of propriety and fairness which should characterize the conduct of

---

[16] R. at 192–93.

[17] "The Trial Counsel made two improper statements during his sentencing argu-
ment that amounted to prosecutorial misconduct. First, he argued that STG3 Kirby's
criminal offense infected the ship, when in fact the only images seen on STG3 Kirby's
phone by a shipmate did not even constitute child pornography. Second, the Trial
Counsel mischaracterized STG3 Kirby's unsworn statement, in which STG3 Kirby
acknowledged the connection between his actions and the impact to the child victims
in the images he possessed." Appellant's Br. at 5.

such an officer in the prosecution of a criminal offense."[18] "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon."[19] "Improper argument is one facet of prosecutorial misconduct."[20] "We review prosecutorial misconduct and improper argument de novo."[21] "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused."[22]

"When a defense attorney fails to object to a sentencing argument at the time of trial, appellate courts review the statement for plain error."[23] "The standard for plain error review requires that: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights. The burden lies with Appellant to establish plain error."[24] "In assessing prejudice under the plain error test where prosecutorial misconduct has been alleged, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial."[25] "We weigh three factors to determine whether trial counsel's improper arguments were prejudicial: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction. The third factor alone may so clearly favor the government that the appellant cannot demonstrate prejudice."[26] "In applying [these] factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were

---

[18] *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)).

[19] *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88).

[20] *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citing *United States v. Young*, 470 U.S. 1, 7–11 (1985)).

[21] *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citing *Sewell*, 76 M.J. at 18).

[22] *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citations omitted).

[23] *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (citations omitted).

[24] *United States v. Witt*, 83 M.J. 282, 285 (C.A.A.F. 2023) (cleaned up).

[25] *Erickson*, 65 M.J. at 224 (cleaned up).

[26] *Andrews*, 77 M.J. at 402 (cleaned up).

so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone."[27]

## B. Analysis

Trial counsel did not commit prosecutorial misconduct. He instead abided:

> When arguing for what is perceived to be an appropriate sentence, the trial counsel is at liberty to strike hard, but not foul, blows. It is appropriate for trial counsel -- who is charged with being a zealous advocate for the Government -- to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence."[28]

With respect to the complained of child erotica comments, trial counsel's argument derived from evidence admitted during sentencing without objection.[29] This included statements from STG1 W. and Appellant to NCIS agents and the results of the forensic examination of his phone. Also at trial counsel's disposal were Appellant's first-person account in the stipulation of fact and his sworn statements to the military judge during the providence inquiry. Finally, trial counsel was free to comment upon Appellant's unsworn statement.[30] All this and reasonable inferences therefrom set a scene aboard the *Jason Dunham*, an aggravating one in trial counsel's view that he was free to argue: Appellant turned to his preferred form of relief from the stressors of life and duty aboard the ship, viewing and collecting images of young girls, child erotica and child pornography intermixed, and he did so in the confines of the ship where other Sailors could—and one did—see the images, even if perchance only some constituting child erotica and not child pornography. Trial counsel may have overstepped by conclusively stating that Appellant "subjected *the other Sailors*"—plural—"to these images,"[31] but he immediately cleaned it up by referring only to STG1 W. and made no further mention of exposing other Sailors.

---

[27] *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (cleaned up).

[28] *Baer*, 53 M.J. at 237 (citations omitted).

[29] Appellant does not contest the admissibility of the evidence, but only trial counsel's use of it in argument. Appellant's Br. at 9.

[30] *See United States v. Barrier*, 61 M.J. 482, 484 (C.A.A.F. 2005) ("The unsworn statement is not subject to cross-examination; however, it is subject to rebuttal, comment during the Government's closing argument, and it may be tempered by appropriate instructions from the military judge.").

[31] R. at 193.

That context is key, and we will not surgically carve out this statement in a quest for prosecutorial misconduct in an otherwise permissible argument.[32]

We also disagree that trial counsel "mischaracterized"[33] Appellant's unsworn statement. Trial counsel was, strictly speaking, correct: "nobody . . . mentioned or acknowledged the lifelong impacts of sexual exploitation to the children victims."[34] Appellant did, though, acknowledge that he contributed to the victims' "demise" and "suffering,"[35] and that's not nothing. But trial counsel acknowledged Appellant's statements and sought to contrast the level of emphasis Appellant (and his mother) applied on the impact of his crime to his own life with that to the children in the images. Trial counsel also sought, permissibly, to put Appellant's recent enlightenment in context, ending his argument:

> During the providence inquiry, Petty Officer Kirby said he looked at these images, essentially participating in the exploitation of children, for his own stress relief. Today, he said [the interrogating NCIS agent] helped him understand that these were real people, that this was a real problem, and that he was continuing the ongoing exploitation. But in the interview, in the interview in the transcript Petty Officer Kirby says, "I'm not a criminal, am I?" With an 18-month sentence, this court can send a strong message that he indeed committed a very strong crime.[36]

We thus find no error in trial counsel's argument, let alone plain or obvious error. But if we did, we would find no prejudice in this military judge alone trial. "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary. As part of this presumption we further presume

---

[32] *See Baer*, 53 M.J. at 238 ("The focus of our inquiry should not be on words in isolation, but on the argument as viewed in context. In this regard, we agree with the Government's position that it is improper to surgically carve out a portion of the argument with no regard to its context. As Justice Frankfurter once commented, 'In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution.'" (cleaned up)).

[33] Appellant's Br. at 5.

[34] R. at 192.

[35] R. at 186–87.

[36] R. at 194–95.

that the military judge is able to distinguish between proper and improper sentencing arguments."[37] And Appellant "fails . . . to provide any evidence that would rebut the presumption. There is nothing in the record that reflects that the military judge was biased or in any way swayed by the comments."[38]

In the end, trial counsel's argument, erroneous or not, had little effect upon the military judge, as reflected by the adjudged sentence to confinement near the bottom of the plea agreement's range.[39] The evidence supporting the sentence was strong, and we are confident the military judge sentenced Appellant on the basis of that evidence alone.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[40]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[37] *Erickson*, 65 M.J. at 225 (citation omitted); *See United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F. 2004) (finding no material prejudice from trial counsel's unwarranted reference to race in sentencing argument before a military judge where "there is no indication in the record that the statement affected the military judge or impacted Appellant's sentence.").

[38] *Id.*

[39] *See Baer*, 53 M.J. at 238 ("In view of the relative lightness of the sentence which appellant received, we believe that his substantial rights were not materially prejudiced by the imperfections in his sentencing hearing.").

[40] 10 U.S.C. §§ 859, 866.