# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32569

————————————

## UNITED STATES
*Appellee*

**v.**

## Antonio V. SIMON
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 August 2020

————————————

*Military Judge:* Andrew R. Norton.

*Approved sentence:* Bad-conduct discharge, confinement for 7 months, reduction to E-1, and a reprimand. Sentence adjudged 15 November 2018 by SpCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before MINK, D. JOHNSON, and RICHARDSON, *Appellate Military Judges.*

Judge D. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Judge RICHARDSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

D. JOHNSON, Judge:

A special court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of five specifications of assault in violation of Article 128, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 928, and one specification of communicating a threat in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1,2] The adjudged sentence consisted of a bad-conduct discharge, confinement for seven months, reduction to the grade of E-1, and a reprimand. The convening authority approved the sentence as adjudged, and the PTA had no impact on the convening authority's ability to approve the adjudged sentence.[3]

On appeal, Appellant personally raises two assignments of error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant asserts: (1) the military judge committed plain error by considering a victim impact statement and failing to identify on the record which portions of the statement he was considering for the purposes of Rule for Courts-Martial (R.C.M.) 1001A; and (2) trial counsel's sentencing argument was improper, amounting to plain error. Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

All specifications of which Appellant was convicted stem from his tumultuous relationship with his wife, DS. Appellant met DS in October 2014; they began dating in June 2015; and they married in November 2016.[4] After they married, the couple's arguments frequently escalated to Appellant physically assaulting DS.

On 27 March 2017, Appellant and DS began arguing about their finances, DS wanting to pick up an additional shift at work, and DS needing to use their shared vehicle. At some point during the argument, Appellant threw a heavy, insulated water bottle at DS, striking her in the face and causing swelling near her eye. After hitting her, Appellant stated, "Maybe next time you'll learn to shut your f**king mouth."

---

[1] Two of the assault specifications and the communicating a threat specification were alleged on divers occasions.

[2] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] The PTA provided that the convening authority would approve no confinement in excess of eight months, but included no other limitations on the sentence he could approve. The convening authority also agreed to withdraw and dismiss with prejudice three additional specifications of assault, and one additional specification of communicating a threat.

[4] The following factual summary is drawn primarily from the stipulation of fact Appellant signed in accordance with his PTA.

Sometime in the month of April 2017, Appellant and DS were having a religious conversation which escalated into an argument. Appellant became angry and said, "You're f**king ignorant." Appellant then struck DS in the face with the back of his clenched fist which caused her lip to bleed and DS to cry.

In early May 2017, Appellant and DS began arguing about changing the date of their formal wedding ceremony. Appellant became angry when DS responded that it was too late to change the date. Appellant pushed DS and struck her on the side of her head with an open hand. A few weeks later, Appellant and DS again began arguing. Appellant struck DS in the face with a clenched fist with the back of his hand; DS developed a black eye as a result.

In early June 2017, Appellant and DS began arguing about finances and politics. Appellant pushed DS on her chest, clenched his hand into a fist, and struck DS in the face with the back of his hand which caused her lip to bleed. As DS attempted to leave the residence, Appellant took DS's car keys which prevented her from leaving. As DS was attempting to flee, Appellant screamed, "You're always trying to leave you crazy b***h" while raising his fist up as if he was going to hit her again. Later, in mid-June or early July 2017, Appellant and DS began arguing again about finances. Appellant was upset because DS was unable to work for two weeks due to a pending surgery. Appellant pushed DS on her chest, and she fell to the ground.

Sometime in August 2017, Appellant and DS attended a music festival. While there, Appellant became angry that DS was dancing, and wanted Appellant to dance, but he did not want to dance. Appellant called DS "a c**t and an insensitive b***h." As the two continued to argue on the drive home from the festival, Appellant became irate and struck DS in the face with the back of a clenched fist approximately three times which caused a bloody nose, black eye, bloody lip, and DS's mouth to fill with blood.

In early September of 2017, DS left the lights on overnight in their shared vehicle. When DS attempted to go to work the next day, the vehicle would not start so she took their other vehicle to work. Appellant became angry and the two began arguing through text message. During this argument, Appellant told DS, "I'll knock your teeth out you stupid b***h." A few weeks later, Appellant became angry because DS walked into their bedroom while Appellant was alone in the bedroom. When DS left the bedroom, Appellant followed her then pushed her on the chest, causing her to fall to the ground.

DS decided to leave Appellant due to the continuous abuse. In early February 2018, prior to leaving the marriage, DS withdrew approximately $3,100.00 from their joint bank account. DS then travelled to Florida to stay with her mother. Appellant became angry and sent DS a text message that stated, "You

think you're safe in Florida I will literally fly down there and put you in your god damn place."

On 12 March 2018, the Security Forces Office of Investigations (SFOI) interviewed Appellant who waived his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831. Appellant told investigators that he sent the text messages to DS to "instill fear in her" and "get her to shut up."

## II. DISCUSSION

### A. Victim Impact Statements

#### 1. Additional Background

During Appellant's presentencing, trial counsel indicated that DS would like to submit to the court both a written unsworn statement and then "she would also like to provide it orally." Trial counsel then submitted Court Exhibit 1, DS's unsworn victim impact statement to the military judge. The military judge then asked the trial defense counsel whether he "had an opportunity to review the matters provided in Court Exhibit 1" to which he responded, "Yes, Your Honor." The military judge then asked if trial defense counsel had any objections to Court Exhibit 1, to which he responded, "No, Your Honor." DS then read Court Exhibit 1 nearly verbatim to the military judge.[5] Trial defense counsel also did not object at any time while DS read her statement to the military judge.

After DS read her statement, the military judge stated *sua sponte*, "I will just like to say for the record that I will consider the victim's unsworn statement for its proper purposes and give it the appropriate weight based on Rules for Courts-Martial 1001A." After conclusion of Appellant's presentencing case, the military judge again stated *sua sponte*:

> Prior to presenting sentencing argument, I would once again like to state for the record that I will consider the victim's unsworn statement, both verbal and written only for the allowable purposes under RCM 1001A, subparagraph c. The victim impact and matters in mitigation to include any financial, social, psychological or medical impact on the victim directly relating to or arising from the offenses of which the accused has been found guilty.

---

[5] The differences between the written and oral victim impact statements were minor and did not impact our analysis.

When the military judge inquired whether the Government or Defense had "any questions or anything to say on the record prior to presenting argument," both counsel responded, "No, Your Honor."

Appellant avers DS's victim impact statement was not limited to impact directly arising from the charged offenses and therefore exceeded the permissible scope under R.C.M. 1001A. Specifically, Appellant avers as improper victim impact under R.C.M. 1001A: (1) DS's statement of "[b]eing called a c**t for not getting hair out of the drain or a b***h because [she] didn't agree with him on his views;" and (2) a description of an event occurring at Christmas where Appellant referred to DS as a "selfish b***h." Appellant further contends the statements: (1) "never being good enough to escape the abusive acts he would induce every day" and (2) "[t]rying to coincide with someone who undermines and humiliates you daily is beyond hurtful" further "compounds the situation" because Appellant was not charged with assaulting and threatening DS every day. Finally, Appellant contends that the failure of the military judge to delineate on the record which portions of the statements the military judge intended to consider materially prejudiced Appellant's right to know what information was being used against him in sentencing.

### 2. Law

"Interpreting R.C.M. 1001A is a question of law, which we review de novo." *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citation omitted). However, we review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001A for an abuse of discretion. *Id.* at 383 (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). In the absence of an objection at trial, we review claims of erroneous admission of a victim's unsworn statement for plain error, which is established when: (1) there is error; (2) which was plain, clear, or obvious, and (3) the error resulted in material prejudice to Appellant's substantial rights. *See United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) (citation omitted).

As the sentencing authority, military judges are "presumed to know the law and apply it correctly." *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009) (per curiam) (citations omitted).

R.C.M. 1001A(e) provides that during presentencing proceedings, the victim of an offense of which the accused has been found guilty "may make an unsworn statement and may not be cross-examined by the trial counsel or defense counsel upon it or examined upon it by the court-martial. The prosecution or defense may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both." "'[V]ictim impact' includes any financial, social, psychological, or medical impact on the victim directly relating to

or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).

When error exists regarding the presentation of victim statements under R.C.M. 1001A, the test for prejudice "is whether the error substantially influenced the adjudged sentence." *Barker*, 77 M.J. at 384 (quoting *Sanders*, 67 M.J. at 346). This is determined by evaluating the relative strength of the parties' cases along with the materiality and quality of the evidence in question. *Id.* (citation omitted). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id.* (citation omitted).

"A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Cook,* 406 F.3d 485, 487 (7th Cir. 2005)). The United States Court of Appeals for the Armed Forces (CAAF) held "[w]hile we review forfeited issues for plain error, we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal." *Id.* (quoting *United States v. Pappas,* 409 F.3d 828, 830 (7th Cir. 2005) (quotation marks and citation omitted)); *see also United States v. Harcrow,* 66 M.J. 154, 156 (C.A.A.F. 2008). In determining whether a particular circumstance constitutes a waiver or a forfeiture, we consider whether the failure to raise the objection at the trial level constituted an intentional relinquishment of a known right. *Campos*, 67 M.J. at 332.

### 3. Analysis

We must first determine whether to apply waiver or forfeiture in this case, or to pierce waiver or forfeiture in order to correct a legal error. This is not simply a case where a victim impact statement was considered without any objection or comment from defense counsel. Here, prior to considering Court Exhibit 1, the military judge asked if there were any objections to the exhibit and defense counsel expressly indicated that he had none. *See United States v. Davis,* 79 M.J. 329, 331 (C.A.A.F. 2020); *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017). As for the oral unsworn statement, this was not a case where the trial defense counsel was unaware of the substance of the oral unsworn statement prior to the victim making the statement in court. The trial counsel indicated DS intended to read Court Exhibit 1 to the military judge, the military judge expressly asked whether the trial defense counsel had an opportunity to review the matters provided as Court Exhibit 1, and trial defense counsel answered, "Yes, Your Honor." In *Campos*, the CAAF noted "[w]hile circumstances may arise where a 'no objection' statement by a defense attorney is not enough to demonstrate an intentional relinquishment of a known right," that is not the case where an appellant's counsel "had advance notice" of an exhibit and "considered the impact . . . on his client's case." *Id.* at

332–33. In this case, we find Appellant waived his objection to the military judge considering DS's written or oral unsworn statements.

However, the CAAF has made clear that the Courts of Criminal Appeals have discretion, in the exercise of their authority under Article 66, UCMJ, 10 U.S.C. § 866, to determine whether to apply waiver or forfeiture in a particular case, or to pierce waiver or forfeiture in order to correct a legal error. *See, e.g.*, *United States v. Hardy*, 77 M.J. at 442–43. Thus, even if Appellant waived his objection, this court must determine whether an error exists that merits piercing his waivers. *See Hardy*, 77 M.J. at 443. On its face, Appellant's assignment of error suggests that the court-martial may have considered a victim impact statement which contained information which went beyond the scope of R.C.M. 1001A, the consideration of which prejudiced Appellant. Accordingly, we find it appropriate to address the substance of Appellant's claims. *See United States v. Lee*, No. ACM 39531 (f rev), 2020 CCA LEXIS 61, at *17 (A.F. Crim. App. 26 Feb. 2020) (unpub. op.).

We disagree with Appellant that the military judge committed plain error. The military judge noted on the record twice that he would only consider those portions of DS's statement permissible under R.C.M. 1001A. Military judges are presumed to know the law and apply it correctly absent clear evidence to the contrary. *Sanders*, 67 M.J. at 346. We decline Appellant's invitation to treat victim impact statements differently because they are not evidence. *See United States v. Hamilton*, 77 M.J. 579, 585 (A.F. Ct. Crim. App. 2017) (en banc), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019). In *United States v. Hamilton*, the CAAF applied the presumption that military judges know what portions of argument are impermissible, absent clear evidence to the contrary, when analyzing the impact of improperly admitted victim impact statements pursuant to R.C.M. 1001A. 78 M.J. at 343. We find that the military judge was not required *sua sponte* to explicitly delineate word for word which portions he intended to consider. The military judge told the parties he would only consider those portions of both the verbal and written victim impact statements for allowable purposes under R.C.M. 1001A, and we have no evidence to the contrary. *See Sanders*, 67 M.J. at 346. As such, the military judge did not commit any error, much less plain error.

Assuming *arguendo* that it was error to consider those portions Appellant avers are improper in DS's oral and written statements, and that the military judge actually considered them, we disagree with Appellant that the statements substantially influenced the adjudged sentence. We apply the factors cited in *Barker*—the relative strength of the parties' cases, along with the materiality and quality of the evidence—below.

The Government's case was strong. Appellant's misconduct could have exposed him to the jurisdictional maximum of a special court-martial including

a bad-conduct discharge, confinement for 12 months, forfeiture of two-thirds pay per month for 12 months, and reduction to E-1. Trial defense counsel successfully negotiated a PTA which limited Appellant's confinement exposure to eight months. Admitted into evidence was a letter of reprimand as well as non-judicial punishment action under Article 15, UCMJ, 10 U.S.C. § 815, where Appellant's commander found he violated a no contact order with DS on divers occasions after his interview with SFOI. Appellant's adjudged sentence was a bad-conduct discharge, seven months of confinement, reduction to E-1, and a reprimand.

Appellant's guilt was laid out in explicit detail both during his providence inquiry and in the stipulation of fact admitted into evidence. The evidence demonstrates that Appellant physically assaulted DS on eight occasions causing visible injuries in five instances, and communicated a threat to her on two occasions. The Defense's case was comparatively weak and consisted of Appellant's oral unsworn statement.

The final two factors of the prejudice analysis, materiality and quality, require us essentially to assess "how much the erroneously admitted evidence may have affected the court-martial." *See United States v. Washington*, ___ M.J. ___ , No. 19-0252, 2020 CAAF LEXIS 296, at *12 (C.A.A.F. 29 May 2020). We are to consider the particular factual circumstances of each case. *Id.* Two considerations the CAAF discussed in *Washington* which are relevant here are the extent to which (1) the Government referred to the evidence in argument, and (2) the evidence contributed to the Government's case. *See id.* (citations omitted).

As for the first consideration, the Government did not refer to the specific statements Appellant avers were improper during its sentencing argument. The Government focused its argument on the specific instances of assault as described in the stipulation of fact. When discussing DS's unsworn statement, trial counsel argued:

> Emotionally, physically, economically, this has affected her. She is forever changed. She had to go through the pain of being hit by someone she loves again, and again and again. And the physical injuries, bruising on her eyes, busted lips, bloody noses, having to go to work and hide what was going on at home. That took a toll on her.

As to the second consideration—the extent to which the allegedly improper comments contributed to the Government's case—any contribution it made was marginal in this judge-alone case. As the CAAF did in *Barker*, we find it "highly relevant" that this case was tried before a military judge who is pre-

sumed to know the law. *Barker*, 77 M.J. 384 (citations omitted). After evaluating Appellant's case in light of the four factors from *Barker*, we do not find that the assumed errors substantially influenced the adjudged sentence. *Id.*

## B. Improper Argument

### 1. Additional Background

Appellant avers the following statements from trial counsel's sentencing argument were improper:

> [T]he most aggravating thing about this entire case is just the *continuous* nature of the assaults and threats. . . . This violence was *constant*, persistent. And . . . when [Appellant *was*] *not assaulting her, he [was] threatening to do it.*
>
> . . . .
>
> Your Honor, when you are thinking about length of confinement in this case, nine months isn't unreasonable, especially when you consider how long this abuse was going on. It started in March of 2017 and extends all the way until February 2018. That is nearly a year of *constant instances of violence, constant instances of threats of violence* over that entire period. Nine months of confinement is appropriate.
>
> . . . .
>
> What is [sic] continuous assaults worth? A bad conduct discharge that is the only way to characterize his service and it is a punishment he has absolutely earned.

(Emphasis added).

Trial defense counsel did not object to any portion of assistant trial counsel's argument.

### 2. Law

Improper argument is a question of law that this court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). If a proper objection is not made we test for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citation omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). The burden of proof under a plain error review rests on the appellant. *See United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted).

"Improper argument is one facet of prosecutorial misconduct." *Id.* (citation omitted). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (alteration in original) (quoting *Fletcher*, 62 M.J. at 179). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, [for example], a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Id.* at 160 (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

Improper argument does not automatically require a new trial or the dismissal of the charges against the accused. *Fletcher*, 62 M.J. at 178. Relief will be granted only if the trial counsel's misconduct "actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *Id.* (quoting *Meek*, 44 M.J. at 5).

The CAAF recommended balancing three factors to assess whether misconduct impacted an appellant's substantial rights and the integrity of his trial: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id.* at 184. The *Fletcher* court did not specify how much weight to give each factor. *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017).

The CAAF extended the *Fletcher* test to improper sentencing argument in *Halpin*, 71 M.J. at 480. In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether "'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the Appellant] was sentenced 'on the basis of the evidence alone.'" *Id.* at 480 (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). The CAAF in *United States v. Frey* framed the third *Fletcher* factor as "the weight of the evidence supporting the sentence." 73 M.J. 245, 249 (C.A.A.F. 2014) (citation omitted).

Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citation omitted). Trial counsel may also argue for an appropriate sentence, "recommend a specific lawful sentence, and may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution." R.C.M. 1001(g).

As the CAAF has explained:

> When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle. A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence. . . . As a result, "plain error before a military judge sitting alone is rare indeed."

*United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000) (citations omitted). Similarly, we presume the military judge is able to filter out improper argument in the absence of evidence to the contrary. *United States v. McCall*, No. ACM 39548, 2020 CCA LEXIS 97, at *20 (A.F. Ct. Crim. App. 26 Mar. 2020) (unpub op.), *rev. denied*, No. 20-0246, 2020 CAAF LEXIS 377 (C.A.A.F. 15 Jul. 2020).

### 3. Analysis

We need not decide today whether trial counsel's argument was improper; even if each comment Appellant avers improper was error, Appellant has failed to meet his burden under *Fletcher* and *Halpin*. "Though *Fletcher* recommended a balancing of all three factors, it did not assign a particular value to each or comment on whether they should be weighed equally." *Frey*, 73 M.J. at 251. In this case, considering the cumulative impact of any improper argument in the context of the trial as a whole, we find as the CAAF did in *Halpin*, that the third *Fletcher* factor weighs so heavily in favor of the Government that we are confident that Appellant was sentenced on the basis of the evidence alone. *See* 71 M.J. at 480. We also find the weight of the evidence in Appellant's case amply supports the sentence imposed. *See id.*

Appellant's misconduct could have exposed him to the jurisdictional maximum of a special court-martial including a bad-conduct discharge, 12 months' confinement, forfeiture of two-thirds pay per month for 12 months, and reduction to E-1. Trial defense counsel successfully negotiated a pretrial agreement which limited Appellant's confinement exposure to eight months.

The uncontroverted evidence against Appellant, as admitted in his providence inquiry and stipulation of fact, reveals that Appellant assaulted DS on eight separate occasions, in some instances causing visible injuries, and communicated a threat twice. When recommending a sentence of a bad-conduct discharge, nine months of confinement, and reduction to E-1, assistant trial counsel focused her argument on the individual assaults, threats, and the overall impact to DS. Trial defense counsel in his own argument recommended a sentence of three or four months of confinement. Trial defense counsel focused his argument on Appellant's remorse and contrition. Appellant's adjudged sentence included a bad-conduct discharge, seven months' confinement, reduction

to E-1, and a reprimand. Appellant's unsworn statement fell far short of outweighing the strong impact of the stipulation of fact, which described in vivid detail the assaults, injuries, and threats DS suffered.

Finally, and quite importantly, this was a military judge-alone trial and the military judge is presumed to know what portions of argument are impermissible absent clear evidence to the contrary. *Hamilton*, 78 M.J. at 343 (citing *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008)). Even if each statement Appellant avers improper constituted obvious error, Appellant failed to establish that the weight of the evidence did not clearly support the adjudged sentence. Therefore, Appellant failed to meet his burden of establishing plain error and is not entitled to relief.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court