# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39964**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Erik M. BEEHLER**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 February 2022

————————————

*Military Judge:* Christina M. Jimenez.

*Sentence:* Sentence adjudged 11 August 2020 by GCM convened at Ellsworth Air Force Base, South Dakota. Sentence entered by military judge on 2 September 2020: Dishonorable discharge, confinement for 24 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Captain Ryan S. Crnkovich, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Alex B. Coberly, USAF; Major Sarah L. Mottern, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges.*

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of wrongfully possessing child pornography, and one specification of wrongful distribution of child pornography on divers occasions, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, *Manual for Courts-Martial, United States* (2016 ed.).[1,2] The court-martial sentenced Appellant to a dishonorable discharge, 30 months of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1.[3]

On appeal, Appellant personally raises two issues: (1) whether trial counsel committed prosecutorial misconduct by improperly focusing his sentencing argument on uncharged conduct; and (2) whether trial counsel committed prosecutorial misconduct by improperly arguing for four years of confinement during his sentencing argument, when Appellant's PTA capped confinement at two years.[4] With respect to issue (2), we have carefully considered Appellant's contention and find it does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to the remaining issue, we find no error materially prejudicial to a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

Appellant was charged with wrongful possession and distribution of child pornography. The specific child pornography at issue consisted of "digital videos and images of minors, or what appear to be minors, engaging in sexually explicit conduct." In the stipulation of fact, Appellant agreed to possessing hundreds of digital images and at least two videos of actual minors or what appeared to be minors engaged in sexually explicit conduct. Appellant also ad-

---

[1] Unless otherwise specified, all other references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] In accordance with the PTA dated 3 August 2020, the convening authority withdrew and dismissed with prejudice an additional charge and specification of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920.

[3] The PTA limited confinement to 24 months.

[4] Both issues were personally raised by Appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). We reworded both issues.

mitted that he downloaded and possessed these images and videos on his personal devices.[5] Appellant further admitted that on at least three separate occasions, he distributed to another person multiple digital images of minors or what appeared to be minors engaged in sexually explicit conduct.

Additionally, Appellant admitted in the stipulation to downloading and possessing approximately 170 images of sexually explicit anime cartoons and other computer-animated images, all of which generally depicted minor females engaged in sexually explicit conduct.[6] These images were not encompassed in the charged offenses but were described with some detail in paragraphs 4 and 5 of the stipulation of fact. Appellant also stipulated and agreed to the "foundation, relevance and admissibility" of Prosecution Exhibits 7 and 8 "should the [P]rosecution seek to use them for the pre-sentencing portion" of Appellant's trial.

Prosecution Exhibit 7 was a compact disc (CD) that contained four folders. The first three folders individually contained the images and videos that pertained to the charged offenses. The fourth folder was labeled "Hentai/Anime Images." Trial counsel informed the military judge that this folder contained media that showed Appellant's uncharged acts of downloading and possessing these images and the Government was offering such media as a matter in aggravation in sentencing. Likewise, Prosecution Exhibit 8 was a CD that contained a collection of other child erotica and memes[7] found on Appellant's devices. Again, trial counsel highlighted to the military judge that the materials on this disc pertained to uncharged acts of downloading and possessing a collection of additional anime and hentai images. Prosecution Exhibits 7 and 8 were admitted without objection. By trial counsel's own estimate, there were approximately 1,500 images between the two exhibits.

During Appellant's providence inquiry, the military judge discussed the references to the anime and cartoons described in paragraphs 4 and 5 of the stipulation with Appellant. During their discussion, Appellant informed the military judge that the references to these images "were added in the interest of being as upfront as [he] could be." The military judge then continued with the following:

---

[5] These devices included hard drives and his cellular phone.

[6] The parties stipulated that Appellant possessed images of "anime/hentai," and that hentai is a type of Japanese erotica characterized by overtly sexualized characters and sexually explicit images and plots.

[7] A meme is a captioned picture or video that is shared online especially through social media.

> I want you to be clear though that this court and in the findings
> of this court, I am looking only for the elements of the offense to
> which you are pleading guilty. Now, I understand that you have
> agreed for various reasons, in your own terminology, "to be up-
> front with the court" and the deal that you have made with the
> convening authority in this pretrial agreement, but that this,
> these two paragraphs specifically, do not go to a charged offense.
> Is that correct?

Appellant agreed with the military judge.

## II. DISCUSSION

Appellant contends that trial counsel committed prosecutorial misconduct by improperly focusing his sentencing argument, in significant part, on uncharged conduct described in the stipulation and shown by the contents of Prosecution Exhibits 7 and 8. Appellant contends that much of the evidence in sentencing of such conduct does not qualify as a matter in aggravation under Rule for Courts-Martial (R.C.M.) 1001(b)(4) and that trial counsel's argument exceeded the bounds for which it was admitted. Appellant asks this court to set aside his conviction and sentence. We disagree with Appellant's contentions and find that no relief is warranted.

### A. Additional Background

In the course of trial counsel's sentencing argument, which comprises approximately ten pages of the transcript, trial counsel referenced these images four times. In the first instance, trial counsel generally referred to the images and explained to the military judge:

> Now, I want to make something abundantly clear. Your Honor,
> we are only asking that you punish [Appellant] for the images
> that depict actual children. But what you would also have is the
> . . . 1500 other additional images that are on the CDs. And, Your
> Honor, what we ask you to use those for is because it shows the
> [Appellant's] attitude towards the offense. It shows that he
> doesn't care about the children who are exploited to create these
> images. He thinks this is a joke.

Trial defense counsel did not object to this argument.

Later in his argument, trial counsel again referred to the media on Prosecution Exhibits 7 and 8 and highlighted that the images were downloaded around the same time as the images and videos that depicted actual children engaged in sexually explicit conduct that was charged by the Government as wrongful possession of child pornography. Trial counsel argued that the media

was relevant as it pertained to Appellant's attitude towards the offenses and that it spoke to Appellant's rehabilitative potential. Trial counsel described some of this media in detail and stated that those images "show the [Appellant's] state of mind." Trial defense counsel did not object to either of these references.

Finally, trial counsel mentioned 880 images of child erotica that were not among the images that Appellant was charged with having wrongfully possessed. Trial defense counsel objected to this reference on the grounds that "child erotica is not child pornography by definition." He further argued that Appellant was "not charged with 880 images of child pornography" and that trial counsel was "mischaracterizing the evidence." The military judge sustained the objection and asked trial counsel to "limit [his] argument to the charge before th[e] court." Trial counsel then stated, "And what I have tried to make abundantly clear is that the child erotica goes to [Appellant's] state of mind, his potential to be rehabilitated. At no time, should this court punish the [Appellant] for child erotica or the anime/hentai pictures."

**B. Law**

We review claims of prosecutorial misconduct and improper argument de novo; when no objection is made at the court-martial, the error is forfeited, and we review for plain error. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). Under the plain error standard, such "error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted).

"Trial prosecutorial misconduct is behavior by the prosecuting attorney that 'oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Id.* at 178 (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88) (additional citation omitted).

In presenting argument, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citation omitted). Trial counsel may strike hard but fair blows but may not "inject his personal opinion into the panel's deliberations, inflame the members' passions or prejudices, or ask them to convict the accused on the basis of criminal predisposition." *United*

*States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citations omitted). In determining whether trial counsel's comments were fair, we examine them in the context in which they were made. *United States v. Gilley*, 56 M.J. 113, 121 (C.A.A.F. 2001). We do not "surgically carve out a portion of the argument with no regard to its context." *Baer*, 53 M.J. at 238 (internal quotation marks omitted).

Among the principal purposes of sentencing are the protection of society from the wrongdoer and deterrence of the wrongdoer and those who know of his crime and sentence from committing the same or similar offenses. *United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A. 1989); *see also* R.C.M. 1001(h). Both the Government and the Defense "may argue for an appropriate sentence." *Id.*

"Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be confident that [the appellant] was sentenced on the basis of the evidence alone." *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017) (quoting *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (alteration in original) (internal quotations and citations omitted)). In assessing prejudice from improper argument, we analyze: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction. *See United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (citation omitted); *Fletcher*, 62 M.J. at 184. In some cases, "the third factor may so clearly favor the [G]overnment that the appellant cannot demonstrate prejudice." *Sewell*, 76 M.J. at 18 (citing *Halpin*, 71 M.J. at 480).

The United States Court of Appeals for the Armed Forces (CAAF) has identified five indicators of severity: "(1) the raw numbers—the instances of misconduct as compared to the overall length of the argument; (2) whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length of the panel's deliberations; and (5) whether the trial counsel abided by any rulings from the military judge." *Fletcher*, 62 M.J. at 184 (citation omitted). In *Halpin*, the CAAF extended the *Fletcher* test to improper sentencing argument. 71 M.J. at 480. In assessing prejudice, the lack of a defense objection is "'some measure of the minimal impact' of a prosecutor's improper comment." *Gilley*, 56 M.J. at 123 (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

Rule for Courts-Martial 1001(b)(4) states that "[t]rial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." As our superior court has noted, the meaning of "directly related" under R.C.M. 1001(b)(4) is partly a function of how strong a connection the aggravating evidence has to the offenses for which appellant has been convicted. *United States v. Hardison*,

64 M.J. 279, 281 (C.A.A.F. 2007). They have further explained that the connection "must be direct as the rule states, and closely related in time, type, and/or often outcome, to the convicted crime." *Id.* at 282.

**C. Analysis**

We begin our analysis by noting that evidence of Appellant's uncharged acts in possessing the images in Prosecution Exhibits 7 and 8 was properly before the court. We reach this conclusion for two reasons. First, Prosecution Exhibits 7 and 8 were properly admitted, without objection, and referenced in the stipulation of fact. On this point, Appellant specifically indicated when he waived a trial of the facts and pleaded guilty that he knew information of uncharged conduct was included in the stipulation of fact. By his own admission, it was "added [to the stipulation] in the interest of being as upfront as [he] could be." Appellant also specifically agreed in the stipulation to the "foundation, relevance and admissibility" of Prosecution Exhibits 7 and 8 "should the [Government] seek to use them for the pre-sentencing portion of this general court-martial."[8]

Second, we find that the contents of Prosecution Exhibits 7 and 8 were proper evidence of aggravation, as the evidence of uncharged conduct was closely related in time, type, and outcome to his possession of child pornography. *See United States v. Mullings,* No. ACM 38623, 2015 CCA LEXIS 405, *12 (A.F. Ct. Crim. App. 30 Sep. 2015) (holding appellant's possession of uncharged child erotica was a proper matter in aggravation to his child pornography conviction). We also conclude, as our court did in *Mullings*, that the contents of Prosecution Exhibits 7 and 8 were interwoven into the res gestae of the charged crime and provided important context about the crime for the sentencing authority. *See id.* at *15. Finally, we agree with our superior court that aggravating evidence may be used to show Appellant's state of mind toward the crime. *See United States v. Gogas*, 58 M.J. 96, 99 (C.A.A.F. 1996) (appellant's letter to his Congressman revealed his indifference to the consequences of criminal conduct). After reviewing trial counsel's argument as a whole, we find that trial counsel made appropriate and fair comment on matters that were properly before the court. In the course of trial counsel's roughly ten-page argument, he made only four references to the contents of the disputed exhibits, with the bulk of his sentencing argument focused on other matters including the child

---

[8] Appellant does not challenge the admissibility of Prosecution Exhibits 7 and 8 on appeal. We find Appellant intentionally abandoned his right to object to the admissibility of these exhibits and therefore waived the issue on appeal. *See United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017) (citing *United States v. Campos*, 67 M.J. 330, 332-33 (C.A.A.F. 2009)).

victims, number of agencies involved, dishonor brought to the Air Force, Appellant's lack of remorse, graphic details of the images Appellant was charged with downloading and possessing, and need to protect society. Trial counsel used Prosecution Exhibits 7 and 8 for the permissible purpose to show Appellant's state of mind, attitude toward the charged offenses, and his rehabilitative potential. *See id.* at 99. Additionally, on at least two occasions during his sentencing argument, trial counsel reinforced the principle that Appellant could only be sentenced for the offenses of which he was convicted. There is no indication that the military judge misunderstood the law or the limits of considering Prosecution Exhibits 7 and 8 in determining an appropriate sentence. Therefore, we conclude that trial counsel's argument was proper and did not amount to error, let alone plain error.

Even if we were to assume error, Appellant's claim still fails because he has not demonstrated prejudice. *See Fletcher*, 62 M.J. at 184. First, we note that trial defense counsel only objected to one of the references to the uncharged media during trial counsel's sentencing argument, and the military judge sustained the objection. Trial defense counsel did not object to the other references noted above. We conclude the lack of defense objection is "some measure of the minimal impact" of trial counsel's statements and supports a finding of no prejudice. *See Carpenter*, 51 M.J. at 397.

Additionally, we note that Appellant wrongfully possessed and distributed child pornography over the course of 18 months, nearly one-third of his military career. He downloaded, saved, and stored the contraband on his cell phone and on his hard drives. Furthermore, he used a popular social media platform, Facebook, to send contraband to another person on at least three occasions. In contrast, Appellant's sentencing case was limited to his unsworn statement, numerous photographs, two character letters, his Article 32, UCMJ, 10 U.S.C. § 832, preliminary hearing waiver, and the testimony from his mother. Appellant gave no explanation for his criminal behavior. The disparity alone between Appellant's significant misconduct and his mitigation case also supports a finding of no prejudice. *See Sewell*, 76 M.J. at 18.

We also agree with the Government that perhaps the best evidence of a lack of material prejudice is the fact the military judge was not persuaded by trial counsel's four-year confinement recommendation and awarded a term nearly identical to the one agreed upon in the PTA. In other words, the military judge had a 30-year range from which to exercise discretion, and yet she adjudged a sentence just six months above the PTA cap. This fact not only demonstrates that both parties, the convening authority, and the military judge all had similar valuations as to an appropriate maximum term of confinement, but also that trial counsel's argument made little impact, if any, on the military judge's decision. *See Halpin*, 71 M.J. at 480 (comparing the lesser adjudged

sentence against the maximum available sentence and finding no prejudice). Moreover, the sentence supports the conclusion that the military judge understood the law and gave the disputed exhibits the appropriate weight. *See United States v. Rapert*, 75 M.J. 164, 170 (C.A.A.F. 2016) (explaining "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary").

Therefore, we conclude that trial counsel's statements did not substantially influence Appellant's sentence, nor otherwise materially prejudice a substantial right of Appellant, and we are confident that Appellant "was sentenced on the basis of the evidence alone." *See Pabelona*, 76 M.J. at 12.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court