# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32666 (f rev)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Gregory A. HALTER, Jr.**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 4 May 2022

————————————

*Military Judge:* Thomas J. Alford; Dayle P. Percle (remand).

*Sentence:* Sentence adjudged on 18 May 2020 by SpCM convened at Sheppard Air Force Base, Texas. Sentence entered by military judge on 4 June 2020, and reentered on 2 March 2022: Bad-conduct discharge, confinement for 6 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Jenna M. Arroyo, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Allison R. Gish, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A special court-martial consisting of a military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928, *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*); and one specification of reckless endangerment, two specifications of assault upon an intimate partner, and an additional specification of assault consummated by a battery, in violation of Articles 114, 128b, and 128, UCMJ, 10 U.S.C. §§ 914, 928b, 928, *Manual for Courts-Martial, United States* (2019 ed.).[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for six months, reduction to the grade of E-1, and a reprimand.[3]

Appellant's case is before this court a second time. Appellant initially raised six assignments of error. One assignment of error asserted that Appellant was entitled to appropriate relief because he was not timely served with the victim's submission of matters—or provided an opportunity to rebut the same—in accordance with Rules for Courts-Martial (R.C.M.) 1106A and 1106(d)(3), prior to the convening authority signing the Decision on Action memorandum in Appellant's case. Another assignment of error asserted that the convening authority erred by not taking action on Appellant's sentence, as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (2016 *MCM*). *See United States v. Brubaker-Escobar*, 81 M.J. 471, 472 (C.A.A.F. 2021) (per curiam). In an earlier opinion, this court agreed with Appellant on these two assignments of error and remanded the case to the Chief Trial Judge, Air Force Trial Judiciary, for new post-trial processing and corrective action. *See United States v. Halter*, No. ACM S32666, 2022 CCA LEXIS 9, at *10 (A.F. Ct. Crim. App. 6 Jan. 2022) (unpub. op.). At the same time, this court deferred addressing Appellant's other assignments of error until the record was returned for completion of this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), review. *Id.*

Following this court's remand, new post-trial processing was completed. On 23 February 2022, the convening authority signed a new Decision on Action

---

[1] Unless otherwise noted, all other references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] Pursuant to the plea agreement, the convening authority agreed to withdraw and dismiss with prejudice after arraignment one specification of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2019 *MCM*).

[3] The plea agreement required that any sentence to confinement for each offense would not exceed six months and that all periods of confinement would be served concurrently.

memorandum, taking no action on the findings and approving Appellant's sentence as adjudged. On 2 March 2022, the military judge signed a new entry of judgment (EoJ). Twenty-two days later, on 24 March 2022, Appellant submitted a supplemental brief to this court, resubmitting his case on its merits with no additional assignments of error, but "specifically preserv[ing] and maintain[ing]" the issues raised in his initial brief. We find that the new post-trial processing—to include the production of a new Decision on Action memorandum and corrected EoJ—remedies the errors identified in this court's earlier opinion, and that no additional corrections or modifications are necessary.

We now turn our attention to Appellant's remaining four assignment of error which we have reordered and reworded: (1) whether the military judge erred by allowing a named victim to present improper victim impact information in the victim's unsworn statement; (2) whether trial counsel committed prosecutorial misconduct during her sentencing argument by arguing that Appellant should be sentenced based on an uncharged offense; (3) whether the military judge abused his discretion by admitting Appellant's letter of reprimand during presentencing; and (4) whether Appellant's sentence is inappropriately severe.[4] We have carefully considered assignment of error (3) and determine that it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Finding no further error materially prejudicial to Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

Appellant joined the United States Air Force on 1 October 2013, and at the time of his court-martial, was stationed at Sheppard Air Force Base (AFB), Texas. Prior to his assignment at Sheppard AFB, Appellant was stationed at Joint Base McGuire-Dix-Lakehurst (JBMDL), New Jersey. The offenses to which Appellant pleaded guilty stemmed from his violent conduct toward two intimate partners. The offenses occurred in February 2016, with respect to one victim, and December 2019 through February 2020, with respect to the other. The information provided in the stipulation of fact and in Appellant's providence inquiry form the basis for the following factual background.

Appellant met NM in 2015, while assigned to JBMDL. The two began dating in November 2015 and the relationship continued until approximately March 2016. Towards the end of their relationship, the couple began to have

---

[4] This issue was personally raised by Appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

problems and frequently argued. Sometime in February 2016, the couple engaged in an argument and NM attempted to leave Appellant's residence. Appellant stopped her by closing the door and putting his body in front of the doorway. Appellant then put his hand around NM's neck and squeezed it, pinning her against a nearby cabinet. He strangled her for approximately five seconds, to the point where NM had difficulty breathing and became light-headed. NM kicked and pushed Appellant in order to get him to release her. Appellant then moved behind her and held her back to his chest. He then placed his hand over her mouth to keep her from screaming. Shortly thereafter, NM ended the relationship.

After his assignment at JBMDL, Appellant moved to Sheppard AFB and eventually met LV. The two dated for approximately three months, from December 2019 until February 2020.

On or about 19 December 2019, Appellant, LV, and LV's roommate were at LV's apartment in Wichita Falls, Texas. The three were playing a drinking game, and Appellant consumed an entire bottle of rum despite the other two urging Appellant to slow down. Appellant then grabbed LV through the clothing on her inner thigh and buttocks, even after LV repeatedly pushed Appellant's hand away, said "no," and told Appellant to stop.

In early February 2020, Appellant and LV were driving to a store. Appellant was angry with LV because she had not taken his advice concerning an issue with her dog. On the way home from the store, Appellant instructed LV to pull the car over because he wanted to talk to her. When LV refused, Appellant pulled the steering wheel and directed the car into another lane of oncoming traffic. LV was able to regain control of the car and avoided an accident.

Later that month, Appellant was visiting with LV in her apartment. LV was lying on the bed with Appellant, completing her schoolwork on her phone. Appellant and LV engaged in an argument regarding Appellant's belief that LV was spending too much time on her schoolwork. Eventually, LV attempted to leave the room to get away from Appellant, and he followed her into the bathroom. Appellant then pushed LV, punched her in the face, poked her in the eye and in her mouth, and used his hands to strangle LV until she was dizzy and lightheaded. LV then repeatedly asked Appellant to leave and eventually was able to alert her roommate, who called 911. The situation continued until local police arrived and arrested Appellant.

## II. DISCUSSION

### A. Victim's Unsworn Statement

Appellant contends that the MJ erred when he allowed LV to discuss an uncharged offense in her unsworn statement to the military judge. Specifically,

Appellant argues that LV's unsworn statement was focused on threatening comments he made to her after the last incident that were not charged, and additionally, that the threatening comments were not tied to the offenses to which Appellant pleaded guilty. To remedy the error, Appellant asks that we set aside his bad-conduct discharge. We disagree; we find that the military judge did not commit plain error in admitting the statement and that no relief is warranted.

### 1. Additional Background

During presentencing proceedings, LV delivered oral and written unsworn statements to the military judge, which were substantially the same. LV explained that she had to leave the city where she lived for her own safety after the assaults, telling the military judge:

> I left Wichita Falls for my own safety. After he had assaulted me, I told him I did not want to be with him anymore. We had a back-and-forth of me saying I did not want to be with him and him saying that our relationship was not over. He told me that he would harass me at school, work, and at my home. He told me he knows what my car looks like and that he would destroy it. He told me he knows where I work and what my school schedule looks like so he would come find me. I was terrified of him because of the assault, so I left.

LV also explained:

> [Appellant]'s crimes absolutely impacted me financially. Because of his crimes, I had to quit my job and consequently lost my main source of income. Now I have to rely on savings and the kindness of my family. Thankfully, the college I now attend is giving out grants because of the coronavirus, but it is not enough to help me long-term. Before [Appellant], I had independence and a stable job with a stable source of revenue, but because he selfishly wanted to keep control of me, I lost it all.

LV further explained the physical and emotional pain she experienced because of Appellant's crimes. For example, she described how seeing the mark on her face for the first time brought her to tears. She also explained that the emotional pain was compounded by the physical pain because when she cried, she felt pain in her throat from internal bruising. A written version of LV's unsworn statement was subsequently admitted as a court exhibit. Trial defense counsel did not object to the victim impact statement when LV delivered it in court or when it was later admitted as a court exhibit.

**2. Law**

Article 6b(a)(4)(B), UCMJ, grants victims of offenses under the UCMJ the right to be reasonably heard at a sentencing hearing related to the offense. 10 U.S.C. § 806b(a)(4)(B). A victim covered by this right is one "who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under [the UCMJ]." Article 6b(b), UCMJ, 10 U.S.C. § 806b(b).

Under R.C.M. 1001, victims in non-capital cases may exercise their right to be reasonably heard through sworn or unsworn statements. R.C.M. 1001(c)(4)–(5). Unsworn statements may be oral, written, or both. R.C.M. 1001(c)(5)(A). Statements offered under R.C.M. 1001(c) "may only include victim impact and matters in mitigation." R.C.M. 1001(c)(3). Victim impact under R.C.M. 1001 includes "any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B).

Interpreting R.C.M. 1001(c)[5] "is a question of law, which we review de novo." *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citation omitted).

R.C.M. 1001(c) "belongs to the victim, and is separate and distinct from the government's right to offer victim impact statements in aggravation under R.C.M. 1001(b)(4)." *United States v. Tyler*, 81 M.J. 108, 111 (C.A.A.F. 2021) (quoting *Barker*, 77 M.J. at 378). "[U]nsworn victim statements are not made under oath, and are thus not evidence." *Id.* at 112. "Although the unsworn victim statement is not subject to the Military Rules of Evidence, this does not mean that the military judge is powerless to restrict its contents." *Id.* "[T]he military judge has an obligation to ensure the content of a victim's unsworn statement comports with the parameters of victim impact or mitigation as defined by [R.C.M. 1001(c)]." *Id.* (citation omitted).

"While the military judge is the gatekeeper for unsworn victim statements, an accused nonetheless has a duty to state the specific ground for objection in order to preserve a claim of error on appeal." *Id.* at 113. In the absence of an objection at trial, we review claims of erroneous consideration of a victim unsworn statement for plain error. Under that standard, an appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially

---

[5] Previously, guidance regarding a victim's right to be reasonably heard in presentencing proceedings were contained in R.C.M. 1001A (*Manual for Courts-Martial, United States* (2016 ed.)); thus, cases tried before 1 January 2019 cited that rule. However, that guidance is now contained in R.C.M. 1001(c) (2019 *MCM*). *See* 2019 *MCM*, App. 15, at A15-18 ("R.C.M. 1001(c) is new and incorporates R.C.M. 1001A of the MCM (2016 edition).").

prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (internal quotation marks and citations omitted). "As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Hays*, 62 M.J. 158, 166 (C.A.A.F. 2005) (quoting *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000)). This is because a "military judge is presumed to know the law and apply it correctly, [and] is presumed capable of filtering out inadmissible evidence . . . ." *Robbins*, 52 M.J. at 457 (citation omitted). Therefore, "plain error before a military judge sitting alone is rare indeed." *Id.* (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)).

When there is error regarding the presentation of victim statements under R.C.M. 1001(c), "the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *Barker*, 77 M.J. at 384 (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). This is determined by evaluating the relative strength of the parties' cases along with the materiality and quality of the evidence in question. *Id.* (citation omitted). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id.* (citation omitted).

### 3. Analysis

As noted above, Appellant did not object to LV's unsworn statement when she delivered it during presentencing or later when it was admitted as a court exhibit. Therefore, we review the issue for plain error. Applying the plain language of R.C.M. 1001(c)(2)(B)—which defines victim impact as "any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty"—we find Appellant has not met his burden to show plain error.

We have evaluated Appellant's claim that LV's unsworn statement included comments she attributed as threats he directed at her after the charged conduct. LV's unsworn statement did not contain the word "threat," nor did she at any point ask the military judge to punish Appellant for threating her. LV described to the military judge the multiple effects she felt because of Appellant's crimes. Specifically, she described how she continued to experience fear, how she became more cautious of who she spent time with, how vulnerable she felt, how she felt controlled by Appellant even when she just wanted to do her schoolwork, how he controlled many aspects of her life, and how his assaults were jarring to her because he "went for [her] face." She also explained

the direct physical pain the assaults caused, and the emotional, psychological and financial fall-out that she experienced post-assault. Part of the social and psychological pain included Appellant's behavior towards her in the days immediately following the assaults. As a direct result of the assaults, LV tried to end her relationship with Appellant, who responded by continuing his controlling behavior towards her and prolonging her psychological harm. Therefore, we find that the victim's description of the impact in this case was closely related to the charged offenses, and thus was proper victim impact material, as it pertained to the psychological impact she experienced following the assault.

Appellant argues on appeal that the military judge should have required redactions to LV's written statement and should have indicated which portions of the victim impact statement he would not consider. However, it is worth stating again that we find LV's unsworn statement permissible, and even if we were to find that the unsworn statement exceeded the bounds of what was permissible, we do not find any prejudice. This was a military judge-alone trial and "[a]s the sentencing authority, a military judge is presumed to know the law and apply it correctly absent clear evidence to the contrary." *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (citing *Erickson*, 65 M.J. at 225). Furthermore, military judges are not required to delineate word for word which portions of the victim impact statements they intend to consider. *See United States v. Simon,* No. ACM S32569, 2020 CCA LEXIS 281, at *12 (A.F. Ct. Crim. App. 19 Aug. 2020) (unpub. op.). Here, we conclude that Appellant has not demonstrated that the military judge committed plain error, or that he suffered any prejudice.

## B. Improper Argument

Appellant next contends that trial counsel erred when she argued Appellant should be sentenced for a crime that he was neither charged with nor convicted of committing. Specifically, Appellant contends that trial counsel erred when she argued that Appellant should be sentenced because Appellant "communicated a threat" to LV. Appellant again asks this court to remedy this error by setting aside his bad-conduct discharge. We are not persuaded by Appellant's arguments and find no relief is warranted.

### 1. Additional Background

Trial counsel's sentencing argument spanned six transcript pages and focused on Appellant's recklessness, control, and violent actions. Trial counsel argued that Appellant, over the course of his short relationships with both NM and LV, violently "lashe[d] out" with "extreme aggression" whenever they would not submit to his demands. Trial counsel then covered the facts of the various incidents as portrayed in the stipulation of fact. Trial counsel asked

the military judge to sentence Appellant to a "reduction in grade to E-1, 6 months' confinement, and a bad-conduct discharge."

Trial counsel then argued:

> [LV] stood before you today and told you that although the physical pain from her assault diminished that she still suffered extreme emotional trauma. She was forced to leave her life in Wichita Falls because [Appellant] was making threats against her, and she feared for her own safety. She lost her job, she lost her friends, she lost her school, and most importantly she lost her sense of security. And why? Because that day she chose to focus on her schoolwork as opposed to showering [Appellant] with the undivided attention that he required at the exact moment that he required it.

At the close of trial counsel's argument, she discussed the need for the sentence to protect society from Appellant. She stated that "6 months' confinement is the most appropriate punishment when considering the protection of society, especially given the threats that were made here. It would provide the victims with a sense of psychological well-being to know that [Appellant] can't cause any more harm while he's in jail."

Trial defense counsel did not object during trial counsel's sentencing argument. However, trial defense counsel did address trial counsel's comments regarding the victim impact statement during his own sentencing argument. Specifically, trial defense counsel challenged the legitimacy of LV's post-assault safety concerns, arguing: "[Appellant] was also placed in pretrial confinement the night that he was arrested after the assault that leads us here today. He's been in pretrial confinement since that night. She knew that."

### 2. Law

The issue of "[i]mproper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citation omitted). However, if the defense does not object to a sentencing argument by trial counsel, we review the issue for plain error. *Id.* (citing *Erickson*, 65 M.J. at 223). To establish plain error, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id.* at 106 (citing *Erickson*, 65 M.J. at 223). Again, because "all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *Bungert*, 62 M.J. at 348.

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United*

*States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Three factors guide our determination of the prejudicial effect of improper argument: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." *United States v. Sewell,* 76 M.J. 14, 18 (C.A.A.F. 2017) (alteration in original) (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)). "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone." *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (alteration, internal quotation marks, and citation omitted).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (internal quotation marks and citation omitted). "[E]ither party may comment on properly admitted unsworn victim statements" during presentencing argument. *Tyler*, 81 M.J. at 113.

"During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows." *Halpin*, 71 M.J. at 479 (internal quotation marks and citation omitted). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial." *Baer*, 53 M.J. at 238. "The focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id.* (internal quotation marks and citations omitted).

"In a military judge alone case we would normally presume that the military judge would disregard any improper comments by counsel during argument and such comments would have no effect on determining an appropriate sentence." *United States v. Waldrup*, 30 M.J. 1126, 1132 (N.M.C.M.R. 1989).

### 3. Analysis

Because there was no objection during trial counsel's argument, we analyze this issue under a plain error standard of review. We conclude that Appellant has failed to establish plain or obvious error. Even if we were to assume such error, Appellant has not shown how he suffered material prejudice.

We begin our analysis by noting that our superior court has made clear that counsel may argue reasonable inferences from matters contained in victim impact statements. *See Tyler*, 81 M.J. at 112 ("If unsworn victim impact statements are part of the evidence of record, they can be commented on by counsel in presenting argument."). In this case, trial counsel's argument twice referred to the threats that Appellant made to LV following the assault.

Trial counsel's first mention of threats during her argument was tied to LV's lack of a sense for her own safety following the assaults. LV's victim impact statement not only informed the trial court that she feared for her safety

because she "was terrified of [Appellant] because of the [physical] assault," but also because Appellant tried to control her after the assault by making threats of more violence. The second and final time trial counsel referenced the threats in her argument, it pertained to one of the three justifications used to support her sentence recommendation of six months' confinement. Specifically, trial counsel generally referenced the threats and discussed the victim's mental well-being and how a sentence to confinement would affect that well-being. We find that trial counsel's argument contained reasonable inferences from matters contained in the victim impact statement. The circumstances following the assaults, including Appellant's statements used to control LV, were already before the military judge, as they were part of LV's unsworn victim statement. As we have noted above, this was permissible victim impact information and was properly before the court. We therefore conclude Appellant has not demonstrated any error in trial counsel's argument, let alone plain or obvious error.

However, even if we were to assume that Appellant could demonstrate clear or obvious error, he has failed to demonstrate any material prejudice or that the error substantially influenced his adjudged sentence. *See Barker*, 77 M.J. at 384. The first *Fletcher* factor considers the severity of the misconduct. 62 M.J. at 184. On this matter, we note that the "lack of a defense objection is some measure of the minimal impact of a prosecutor's improper argument." *See United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (internal quotation marks and citation omitted). Trial counsel only referenced Appellant's "threats" on two brief occasions in an argument that focused on Appellant's aggression, violence, and control, and spanned six pages of printed record. Therefore we would find that the comments were minor and relatively insignificant and do not amount to misconduct.

The second *Fletcher* factor, the curative measures taken, 62 M.J. at 184, also weighs in the Government's favor. Here, no curative instruction was necessary because it was a judge-alone forum, and military judges are presumed to know and follow the law, absent clear evidence to the contrary. *See United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (citation omitted). We also assume when analyzing allegations of improper sentencing argument in a judge-alone forum that a military judge "is able to distinguish between proper and improper sentencing arguments." *Erickson,* 65 M.J. at 225. Appellant has presented no evidence that the military judge in this case was unable to distinguish between proper and improper sentencing argument. Moreover, we find that trial defense counsel's own sentencing argument adequately responded to trial counsel's argument involving the victim impact statement. Specifically, trial defense counsel highlighted that Appellant was not a continued threat to LV because he had been in pretrial confinement since the night

he was arrested at LV's apartment. We find that trial defense counsel's argument adequately challenged and neutralized any potential improper argument by trial counsel.

As to the third *Fletcher* factor, the weight of the evidence supporting the sentence, 62 M.J. at 184, we find this factor also weighs in the Government's favor. The evidence in this case was strong and uncontested. It primarily came from Appellant's own admissions to the military judge during his guilty plea inquiry and the stipulation of fact. We find the facts and circumstances highlighted in these documents provide substantial justification to support the sentence, irrespective of trial counsel's argument. On appeal, Appellant focuses on LV's victim impact statement, but she was not the only victim. Appellant strangled two different intimate partners. He explained to the military judge in detail how he used his hands to put pressure on their necks until they were dizzy and light-headed. We conclude that the weight of the evidence supports the adjudged sentence.

In conclusion, we find that Appellant has failed to meet his burden to demonstrate plain error, and after considering trial counsel's comments as a whole, we are confident that Appellant was sentenced based on the evidence alone. *See Halpin*, 71 M.J. at 480.

## C. Sentence Appropriateness

Appellant contends that his sentence was inappropriately severe given the facts of the charged offenses, and the matters in mitigation and extenuation. Appellant asks us to reduce his sentence. We are not persuaded by Appellant's contentions and find his sentence appropriate.

### 1. Additional Background

During the presentencing hearing, Appellant presented matters in extenuation and mitigation. This evidence included testimony from Appellant's father, who explained to the military judge that Appellant's mother struggled with mental health issues and was often verbally and physical abusive to Appellant when Appellant was a child. Appellant's father further described that the abuse Appellant suffered has continued to impact Appellant's behavior in a negative way. Appellant also provided an unsworn statement, where he accepted responsibility for his actions, expressed remorse for his crimes, and apologized to both NM and LV. Appellant also discussed his upbringing and his own mental health struggles, and described for the military judge how those things continued to affect Appellant's interactions with those close to him.

### 2. Law

"We review sentence appropriateness de novo." *United States v. Datavs*, 70 M.J. 595, 604 (A.F. Ct. Crim. App. 2011) (citing *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005)), *aff'd*, 71 M.J. 420 (C.A.A.F. 2012). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 3. Analysis

We have conducted a thorough review of Appellant's entire court-martial record, including his unsworn statement, enlisted performance reports, the testimony of the defense sentencing witness, and the materials submitted by Appellant during sentencing and in clemency. We conclude that the nature and seriousness of the offenses clearly support the approved sentence. Here, Appellant strangled two women with whom he was intimately involved. He used enough force and violence to make both victims dizzy and light-headed. Appellant admitted to escalating minor verbal disagreements into violent physical assaults on separate occasions, in addition to the other offenses to which he pleaded guilty. His criminal behavior, moreover, showed a gross disregard towards his victims, and at least one of his victims was still struggling with the effects of Appellant's criminal actions at the time of Appellant's court-martial. We further find that Appellant's arguments and analysis on appeal are similar to the matters he provided to the convening authority in pursuit of post-sentencing relief. "While these matters are appropriate considerations during clemency, they do not show [Appellant]'s sentence is inappropriately severe." *United States v. Aguilar*, 70 M.J. 563, 567 (A.F. Ct. Crim. App. 2011). We find Appellant's recitation of these prior arguments amounts to another attempt at clemency, which is not an authorized function of this court. *See Nerad*, 69 M.J. at 146. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, *see* Article 66(d), UCMJ, 10 U.S.C. § 866(d), we conclude that the sentence is not inappropriately severe.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court